**In re THE MUSIC STORE, INC., Debtor.**

**Bankruptcy No. 96–03259–M.**

United States Bankruptcy Court, N.D. Oklahoma.

Nov. 13, 1999.

James J. Proszek, Tulsa, OK, for Jim D. Manley, CPA.

Paul R. Thomas, Tulsa, OK, United States Trustee.

## MEMORANDUM OPINION

TERRENCE L. MICHAEL, Bankruptcy Judge.

THIS MATTER comes before the Court pursuant to the Application of Jim D. Manley, CPA, Inc. ("Manley") to Amend Order Authorizing Employment of Jim D. Manley, CPA, Inc., *Nunc Pro Tunc* (the "*Nunc Pro Tunc* Application") and the Application of Interim Allowance of Fees by Manley (the "Fee Application"). Pursuant to the Fee Application, Manley seeks an award of fees and expenses in the amount of $19,970.00. Pursuant to the *Nunc Pro Tunc* Application, Manley seeks approval of his employment as of August 20, 1996, instead of September 13, 1996, the date the application to employ Manley was filed.

A hearing on the *Nunc Pro Tunc* Application and the Fee Application was held on November 3, 1998. Manley appeared by and through its attorney, James J. Proszek. Paul R. Thomas appeared on behalf of the United States Trustee. The Court received evidence and heard argument from the parties. At the conclusion of the hearing, counsel for Manley requested an opportunity to brief the issue of the appropriateness of the *nunc pro tunc* employment of Manley. Said request was granted, and Manley submitted its brief to the Court on or about November 10, 1998. At that point the matter was taken under advisement. The following constitute the Court's findings of fact and conclusions of law as required by Bankruptcy Rule 7052.

### Jurisdiction

The Court has jurisdiction in this case pursuant to 28 U.S.C. § 1334(b),[1] and venue is proper pursuant to 28 U.S.C. § 1409. Reference to the Court of this contested matter is proper pursuant to 28 U.S.C. § 157(a) and 11 U.S.C. § 330, and it is a core proceeding as contemplated by 28 U.S.C. § 157(b)(2)(A).

### Findings of Fact

The Music Store, Inc., Debtor herein (the "Music Store"), filed its petition for relief under Chapter 11 of the United States Bankruptcy Code on August 20, 1996. Immediately upon commencement of the case, Manley began performing accounting services on behalf of the Music Store. Most of these accounting services appear routine in nature, relating to matters such as the filing of delinquent tax returns, calculating the proper amount of payroll taxes, and coding and recording information in the general ledger of the Music Store.[2] Notwithstanding the fact that Manley began performing services for the Debtor immediately upon the filing of the case, the application to employ Manley was not filed until September 13, 1996.

1. Unless otherwise noted, all statutory references are to sections of the United States Bankruptcy Code, 11 U.S.C. § 101 *et seq.* (West 1998).

2. At the hearing on this matter, Mr. Jim Manley, President of Manley, testified that he was aware that a specific IRS agent intended to visit the premises of the Music Store. Mr. Manley further testified that, based upon his experience, this individual only appeared on the premises of a business if the IRS intended to "lock down" that business. Apparently that information may have precipitated the bankruptcy filing. Notwithstanding the same, the only time entry prior to September 13, 1996, which appears to have related to this issue is a quarter-hour entry on August 26, 1996, labeled "Phonecon With IRS Collections." The balance of the tasks performed in this time period are routine accounting tasks.

The Court entered an order approving Manley's employment on September 18, 1996.

The evidence received by the Court at the November 3, 1998, hearing established that Manley relied upon counsel for the Music Store to file the appropriate application for Manley's employment. Said counsel, for reasons unspecified in the record, did not file the application in a timely manner. Counsel for Manley argued that the failure to timely file the application was due to counsel's inexperience in representing Chapter 11 debtors.

During the time period between August 21, 1996, and May 22, 1998, Manley performed accounting services on behalf of the Music Store. The Court received detailed testimony at the November 3, 1998, hearing regarding the services performed, the reasonableness of the fees sought, and their benefit to the estate. The United States Trustee, who had originally objected to the Fee Application, withdrew her objection after hearing the evidence, and after Manley voluntarily reduced the fees sought by the sum of $246.25. At the conclusion of the hearing, the Court indicated that it was satisfied that the fees sought were reasonable, and that the services performed conferred a benefit to the estate. The only question which remained was whether the *Nunc Pro Tunc* Application should be granted.

## Conclusions of Law

The evidence before the Court indicates that the failure to timely file the application to employ Manley was a result of the neglect of bankruptcy counsel for the Music Store. The question before the Court

is whether such neglect justifies appointment of Manley on a *nunc pro tunc*[3] basis. After reviewing the applicable case law, the Court answers the question in the negative.

The United States Court of Appeals for the Tenth Circuit has ruled that "[s]imple neglect will not justify *nunc pro tunc* approval of a debtor's application for employment of a professional." *In re Land*, 943 F.2d 1265, 1268 (10th Cir.1991) (hereafter "*Land*"). This Court need look no further; *Land* is controlling precedent in this circuit. However, *Land* does not stand alone; several other courts have reached the same conclusion. *See In re Jarvis*, 53 F.3d 416, 421 (1st Cir.1995); *see also In re Arkansas Co.*, 798 F.2d 645, 651 (3rd Cir. 1986) (hereafter "*Arkansas Co.*"); *see also Rodriguez–Quesada v. U.S. Trustee*, 222 B.R. 193, 199 (D.Puerto Rico 1998); *see also In re Franklin Savings Corporation*, 181 B.R. 88, 90 (Bankr.D.Kan.1995); *see also In re Shirley*, 134 B.R. 940, 943 n. 4 (9th Cir. BAP 1992). The rule is clear: neglect by debtor's counsel does not justify *nunc pro tunc* retention of professionals. If such neglect constituted "extraordinary circumstances," the rule would soon be swallowed whole by the exception. *See In re Jarvis*, 53 F.3d at 421 ("Logic and experience dictate that if the category of extraordinary circumstances were expanded to include mere oversight, the modifying adjective "extraordinary" would be completely emptied of its meaning."). The possibility that the failure of debtor's counsel to timely file an application to employ Manley may have been the result of inexperience does not make the conduct any less neglectful.[4]

3. Although many courts, including this Court and our own court of appeals (*see In re Land*, 943 F.2d 1265 (10th Cir.1991)), have consistently referred to such requests as applications for employment *nunc pro tunc*, such a reference is technically incorrect. The ordinary meaning of the phrase *nunc pro tunc* is "now for then," and refers to corrections of court records so that they reflect what actually transpired. What is sought here is not the correction of an order actually entered; rath-

er, Manley seeks an order authorizing his employment *post facto*. *See In re Jarvis*, 53 F.3d 416, 418 n. 2 (1st Cir.1995).

4. When counsel seek the permission of this Court to represent a debtor in a Chapter 11 bankruptcy case, they represent to the Court that they possess the expertise to effectively represent the debtor, and that they are familiar with the operative provisions of the United States Bankruptcy Code and the Bankruptcy

Manley cites various authorities in support of his argument that the Court should grant the *Nunc Pro Tunc* Application based upon the following factors:

> [W]hether the applicant or some other person bore responsibility for applying for approval; whether the applicant was under time pressure to begin service without approval; the amount of delay after the applicant learned that initial approval had not been granted; the extent to which compensation to the applicant will prejudice innocent third parties; and other relevant factors.

*See In re Arkansas Co.,* 798 F.2d 645, 650 (3rd Cir.1986); *accord, In re Jarvis,* 53 F.3d at 420. These two cases offer no sanctuary for Manley. Both hold that "[s]uch [extraordinary] circumstances do *not* include the mere neglect of the professional who was in a position to file a timely application." *Arkansas Co.,* 798 F.2d at 650 (emphasis added); *accord, In re Jarvis,* 53 F.3d at 422. In addition, the other cases relied upon by Manley are distinguishable. Although *In re Little Greek Restaurant, Inc.,* 205 B.R. 484 (Bankr. E.D.La.1996) purports to rely upon *Arkansas,* it fails to recognize that portion of the opinion in *Arkansas* which states that the mere neglect of counsel to file an application for employment is not cause for appointment *nunc pro tunc. See* 205 B.R. at 487. Manley cites one case which does stand for the proposition that *nunc pro tunc* appointments may be based upon the excusable neglect of counsel. *See In re Lindo's Tours, USA, Inc.,* 55 B.R. 475, 478 (Bankr.M.D.Fla.1985). However, this concept has been expressly rejected by the United States Court of Appeals for the Tenth Circuit in *Land. See* 943 F.2d at 1268. Finally, in *In re Rheam of Indiana, Inc.,* 142 B.R. 698 (E.D.Pa.1992), the em-

ployment of the professional at issue was sought prior to the commencement of services; however, the services were performed in the two month period between the date of the application to employ and the date of the entry of the order approving employment. *See In re Rheam of Indiana, Inc.,* 111 B.R. 87, 93–95 (Bankr. E.D.Pa.1990). In this case, the Court is awarding compensation from the date of the filing of the application, and not the date the order approving the application was signed, a significant factual distinction from *Rheam.*[5]

The Court is not unmindful that the effect of today's ruling is to deny compensation to Manley for services which benefitted the estate. However, this Court is constrained by controlling authority from awarding all of the fees requested. In addition, this Court agrees with the following analysis of the United States Court of Appeals for the First Circuit:

> We are aware that Scotti rendered valuable services to the estate, and we take no pleasure in denying him the fruits of his labor. But we do what we must, for the greater good lies not in the transient lure of *ad hoc* decisionmaking, but in the evenhanded application of the rule of law.

*In re Jarvis,* 53 F.3d at 422. Of the fees sought, $1,336.75 relate to services performed by Manley prior to the filing of the application to approve its employment. Those fees will be disallowed. The balance of the fees sought, in the sum of $18,633.25, is approved.

A separate order consistent with this Memorandum Opinion is entered concurrently herewith.

---

Rules, including but not limited to the provisions governing the hiring of professionals.

**5.** Applications to employ professionals are routinely ruled on in this district *ex parte. See* N.D.Bankr. LR 2014. The Court does not believe it equitable to saddle a professional

with the risk of a delay as a result of paper flow within the clerk's office or in chambers. Accordingly, this Court looks to the date of application, not the date of appointment, as the operative date of a professional's employment.