**In re Richard C. POLISHUK, Debtor.**

**No. 98–02320–M.**

United States Bankruptcy Court, N.D. Oklahoma.

Jan. 31, 2001.

John Jarboe, Joseph T. Howard, Tulsa, OK, for Plaintiff.

Scott W. Bradshaw, Tulsa, OK, for Defendant.

## MEMORANDUM OPINION

TERRENCE L. MICHAEL, Chief Judge.

THIS MATTER came before the Court for consideration of the Application by Counsel for Debtor for Order Approving Attorney's Fees and Costs and Allowing Chapters 11 and 13 Attorney's Fees and Expenses as Administrative Priority in Chapter 7 (the "Jarboe Application") filed by the law firm of Jarboe & Stoermer, P.C. ("J & S"), and the First Amended Application for Attorney's Fees (the "Howard Application") filed by Joseph T. Howard, Special Counsel ("Mr.Howard"). Objections to the Jarboe Application and the Howard Application were filed by Scott W. Bradshaw, the duly appointed Chapter 7 Trustee in this case ("Trustee" or "Mr. Bradshaw") and Nancy Polishuk ("Ms. Polishuk"), a creditor holding a non-dischargeable priority claim. Evidentiary

hearings with respect to the Jarboe Application and the Howard Application were held on November 30, 2000, and December 14, 2000, respectively. The following findings of fact and conclusions of law are made pursuant to Bankruptcy Rule 7052 and Federal Rule of Civil Procedure 52, which are made applicable to these contested matters by Bankruptcy Rule 9014.

### Jurisdiction

The Court has jurisdiction over these contested matters pursuant to 28 U.S.C.A. § 1334(b).[1] Their reference to this Court is proper pursuant to 28 U.S.C.A. § 157(a). They are core proceedings as contemplated by 28 U.S.C.A. § 157(b)(2)(A) & (B).

### Burden of Proof

▮ J & S and Mr. Howard each seek an award of fees and expenses for services rendered during the course of this bankruptcy case. Any professional seeking to be paid fees and expenses from a bankruptcy estate has the burden "to prove and establish the reasonableness of each dollar, each hour, above zero." *In re Burke*, 147 B.R. 787, 798 (Bankr.N.D.Okla.1992) (citing *Mares v. Credit Bureau of Raton*, 801 F.2d 1197, 1210 (10th Cir.1986)). Several courts have noted that "[t]his burden is not to be taken lightly, especially given the fact that every dollar expended on fees results in a dollar less for distribution to creditors of the estate." *In re Mahaffey*, 247 B.R. 823, 825 (Bankr.D.Mont.2000) (and cases cited therein). Similarly, an applicant is required to present its fee application in such a form as to make the tasks performed and the time spent readily apparent. The court need not speculate or theorize as to the work performed. *Cf. In re Seneca Oil Co.*, 65 B.R. 902, 908 (Bankr.W.D.Okla.1986). The substantive requirements for such an application are set forth in Bankruptcy Rule 2016(a).[2]

---

1. Unless otherwise noted, all statutory references are to sections of the United States Bankruptcy Code, 11 U.S.C.A. § 101 *et seq.* (West 2001).

2. Bankruptcy Rule 2016(a) provides as follows:

 **(a) Application for Compensation or Reimbursement.** An entity seeking interim or final compensation for services, or reimbursement of necessary expenses, from the

## Findings of Fact

A rather detailed recitation of the facts of this case is necessary in order to understand today's ruling. Richard C. Polishuk ("Debtor" or "Mr. Polishuk") filed an original petition for relief under Chapter 11 of the United States Bankruptcy Code on Friday, June 12, 1998, at 12:20 p.m. At the time, Mr. Polishuk was the defendant in a divorce action (the "Divorce Action") brought by Ms. Polishuk in the District Court in and for Tulsa County, Oklahoma (the "State Court"). Within minutes of filing his bankruptcy petition, Mr. Polishuk sought to remove the Divorce Action to this Court. *See Adv. Proc. No. 98–0179– M, Docket No. 1.* The Court, on its own motion, held a hearing in the late afternoon of June 12, 1998, and ordered the Divorce Action remanded to the State Court.[3] *See Adv. Proc. No. 98–0179–M, Docket No. 2.*

The Divorce Action proceeded to trial on Monday, June 15, 1998. After a four-day trial, the State Court entered its *Nunc Pro Tunc* Journal Entry of Judgment and Decree of Divorce (the "Divorce Decree") on August 10, 1998. In the Divorce Decree, the State Court ordered Mr. Polishuk to hold Ms. Polishuk harmless from certain credit card obligations. In addition, one of the major assets at issue between Debtor and Ms. Polishuk was an investment account with a brokerage firm known as A.G. Edwards & Sons (the "A.G. Edwards Account"). The State Court awarded one-half of the A .G. Edwards Account to Ms. Polishuk, much to the chagrin of Mr. Polishuk. Later, in a separate order, the State Court entered judgment against Mr. Polishuk and in favor of Ms. Polishuk in the amount of $44,909.78, which represented an award of her attorneys' fees and costs incurred in the Divorce Action.

On June 18, 1998, immediately upon the conclusion of the Divorce Trial, Mr. Howard filed an application to be employed as special counsel to the Debtor for purposes of trying the Divorce Action. Ms. Polishuk objected to the appointment. The objection was overruled, and Mr. Howard was appointed as special counsel to the debtor on a *nunc pro tunc* basis by virtue of an order entered on August 25, 1998. *See Docket Nos. 37M and 38.*[4]

estate shall file an application setting forth a detailed statement of (1) the services rendered, time expended and expenses incurred, and (2) the amounts requested. An application for compensation shall include a statement as to what payments have theretofore been made or promised to the applicant for services rendered or to be rendered in any capacity whatsoever in connection with the case, the source of the compensation so paid or promised, whether any compensation previously received has been shared and whether an agreement or understanding exists between the applicant and any other entity for the sharing of compensation received or to be received for services rendered in connection with the case, and the particulars of any sharing of compensation or agreement or understanding therefor, except that details of any agreement by the applicant for the sharing of compensation as a member or regular associate of a firm of lawyers or accountants shall not be required. The requirements of this subdivision shall apply to an application for compensation for services rendered by an attorney or accountant even though the application is filed by a creditor or other entity. Unless the case is a chapter 9 municipality case, the applicant shall transmit to the United States trustee a copy of the application.
Bankruptcy Rule 2016(a).

3. Upon receipt of the petition for removal of the Divorce Action, this Court became concerned and contacted the judge in the Divorce Action. Said judge advised this Court that the trial of the Divorce Action was scheduled to begin on Monday, June 15, 1998.

4. This Court is aware of the requirement that "extraordinary circumstances" must be present in order to justify employment of a bankruptcy professional on a *nunc pro tunc* basis. *See In re Land*, 943 F.2d 1265 (10th Cir.1991); *see also In re The Music Store, Inc.*, 241 B.R. 752 (Bankr.N.D.Okla.1999). Given the fact that Mr. Howard was retained after the close of business on a Friday, and was required to be in State Court trying the Divorce Action the following Monday, the Court found such "extraordinary circumstances" to be present.

*The Case as a Chapter 11 Case*

After completion of the Divorce Action, this case proceeded as a Chapter 11 case until March 3, 1999, when, upon the request of Mr. Polishuk, it was converted to a case under Chapter 13. *See Docket No. 93.* During the nine-month duration of the case as a Chapter 11, the Debtor hired J & S as his attorneys,[5] and also hired an accountant. Debtor filed various operating reports during the pendency of the Chapter 11 case. In his initial report (*Docket No. 27*), Debtor projected net income during the first four months of the bankruptcy case of $49.00, $49.00, $549.00 and $549.00. The monthly operating reports for that four-month period (June, July, August and September of 1998) reflected actual net income of $142.00, ($112.69), $154.98 and ($250.55), amounts far less than projected. *See Docket Nos. 51, 52, 54 and 60.* Debtor's net income failed to improve significantly at any time while the case remained in Chapter 11.[6]

The battle between Mr. Polishuk and Ms. Polishuk which began in the State Court continued unabated in this Court. After the State Court entered the Divorce Decree, Mr. Polishuk appealed the same to the Oklahoma Court of Civil Appeals. Ms. Polishuk sought conversion of this case to Chapter 7. *See Docket No. 44.* In addition, Ms. Polishuk sought to enforce provisions of the Divorce Decree relating to the division of property (most notably the A.G. Edwards Account), and sought relief from this Court in order to do so. *See Docket No. 29.* The requested relief was granted by order of this Court entered on October

8, 1998. *See Docket No. 46.* Eventually, the parties settled the issues relating to the appeal of the Divorce Decree and the division of the A.G. Edwards Account. Under the terms of the settlement, Ms. Polishuk waived her interest in the A.G. Edwards Account, and Mr. Polishuk dismissed his appeal of the Divorce Decree. The compromise was approved by order of this Court entered on January 12, 1999. *See Docket No. 77.*

Approval of the compromise did little to douse the fires of litigation between Mr. and Ms. Polishuk. Ms. Polishuk continued to seek conversion of the bankruptcy case to Chapter 7. She also continued to prosecute an adversary proceeding (which was hotly contested by Mr. Polishuk) seeking a determination that the obligations of Mr. Polishuk under the Divorce Decree were non-dischargeable. In response, Mr. Polishuk argued that all but $29.70 of the amounts due under the Divorce Decree were dischargeable, and proposed various plans which provided for payment of less than the full amount of Ms. Polishuk's claim, all of which is discussed more fully below.

*The Adversary Proceeding*

On September 15, 1998, Ms. Polishuk filed the aforementioned adversary proceeding against Mr. Polishuk (the "Adversary Proceeding"), claiming that certain amounts owed to her under the Divorce Decree were in the nature of alimony, maintenance or support, and were thus non-dischargeable under the provisions of § 523(a)(5).[7] She also contended that said

5. The case was originally filed by a Mr. David Leavitt, who withdrew as counsel for the Debtor on July 7, 1998. *See Docket No. 16M.*

6. Notwithstanding the fact that Debtor remained in Chapter 11 until March of 1999, he only filed operating reports through December 31, 1998. Those reports reflected the following net income:

| | |
|---|---|
| October, 1998: | $743.38 |
| November, 1998: | $159.56 |
| December, 1998: | $275.53 |

*See Docket Nos. 72, 73 and 86.*

7. Section 523(a)(5) provides that

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

. . . .

(5) to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree or other order of a court of record, determination made in accordance with State or territorial

amounts were entitled to priority claim status under § 507(a)(7).[8] In response, Mr. Polishuk alleged that the only item which should be held non-dischargeable was the sum of $29.70 in unpaid child support, and claimed that the balance of his obligations under the Divorce Decree should be discharged.

The Adversary Proceeding was tried to the Court on August 11, 1999. On August 24, 1999, this Court issued its memorandum opinion and judgment finding Mr. Polishuk's obligation to hold Ms. Polishuk harmless with respect to certain credit card debt and his obligation to pay her attorneys' fees incurred in the Divorce Action to be non-dischargeable. In addition, the Court found these claims entitled to priority status under § 507(a)(7). *See Polishuk v. Polishuk (In re Polishuk)*, 243 B.R. 408 (Bankr.N.D.Okla.1999). Mr. Polishuk appealed the decision of this Court to the United States District Court for the Northern District of Oklahoma, which affirmed this Court's decision. *Polishuk v. Polishuk (In re Polishuk)*, No. 99–CV–901–C(J), slip op. (N.D.Okla. October 19, 2000).

*Litigation with TMCC*

Debtor's motor vehicle was the subject of a motion for relief from the automatic stay filed by Toyota Motor Credit Corporation ("TMCC"). The matter was resolved by the entry of an agreed order requiring Debtor to make adequate protection payments to TMCC. *See Docket No. 67.* Mr. Polishuk later defaulted under the terms of said order and relief from the automatic stay was granted to TMCC on March 17, 1999. *See Docket No. 101M.* Notwithstanding the entry of the relief order, Debtor continued to negotiate with TMCC for the retention of the vehicle. On April 23, 1999, Debtor and TMCC submitted an agreed order vacating the prior order granting relief from the automatic stay and allowing Mr. Polishuk to retain the vehicle upon certain terms and conditions. *See Docket No. 118.*

*The Case as a Chapter 13 Case*

At the request of Mr. Polishuk, the case was converted to a case under Chapter 13 of the Bankruptcy Code on March 3, 1999. On April 2, 1999, Debtor filed his Chapter 13 Plan (the "Plan"). *See Docket No. 111.* Under the terms of the Plan, Debtor proposed to make monthly payments of an ever-increasing amount over a period of sixty months.[9] In addition, the Plan provided that in the event Mr. Polishuk recovered monies from various claims he purported to hold against third parties, those

---

law by a governmental unit, or property settlement agreement, but not to the extent that—
(A) such debt is assigned to another entity, voluntarily, by operation of law, or otherwise (other than debts assigned pursuant to section 408(a)(3) of the Social Security Act, or any such debt which has been assigned to the Federal Government or to a State or any political subdivision of such State); or
(B) such debt includes a liability designated as alimony, maintenance, or support, unless such liability is actually in the nature of alimony, maintenance, or support;

**8.** Section 507(a)(7) provides as follows:
(a) The following expenses and claims have priority in the following order:
. . . .
(7) Seventh, allowed claims for debts to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree or other order of a court of record, determination made in accordance with State or territorial law by a governmental unit, or property settlement agreement, but not to the extent that such debt—
(A) is assigned to another entity, voluntarily, by operation of law, or otherwise; or
(B) includes a liability designated as alimony, maintenance, or support, unless such liability is actually in the nature of alimony, maintenance or support.

**9.** The First Plan proposed a payment of $365.00 in the first month, payments of $755.00 during months 2 through 14, $1,065.00 during months 15 through 36 and $1,350.00 during months 37 through 60.

monies would be used for additional payments to unsecured creditors. With respect to the claim of Ms. Polishuk, the Plan provided for payment in full without interest of the credit card obligations which Mr. Polishuk was ordered to pay in the Divorce Action, and treated the award of attorneys' fees as a non-priority unsecured claim. Although the Plan recognized tax obligations to the Internal Revenue Service (the "IRS") and the Oklahoma Tax Commission (the "OTC") in the amounts of $9,036.00 and $676.00 respectively, the Plan did not attempt to amortize those claims. Instead, the Plan provided that those claims "will be paid via periodic infusions of additional income to Debtor as a result of real estate broker commissions or from the liquidation of the A.G. Edwards Account, or independent financing at the end of the Plan." [10]

The Plan drew objections from Ms. Polishuk and the Chapter 13 Trustee. See Docket Nos. 119 and 120. In part, the Trustee objected to the "vague and indefinite treatment" of the claims of the IRS and the OTC, and also objected on the basis that the Plan was not feasible. Ms. Polishuk objected in large part on the grounds that the Plan was not feasible and was not proposed in good faith. A hearing on those objections was scheduled for June 18, 1999. At the hearing, Mr. Polishuk sought and obtained (with the consent of Ms. Polishuk and the Chapter 13 Trustee)

a continuance of the hearing on confirmation of the Plan until after the conclusion of the Adversary Proceeding. See Docket Nos. 129 and 130.

The Court handed down its ruling in the Adversary Proceeding on August 24, 1999. On September 10, 1999, the Court issued an order denying confirmation of the Plan, and requiring that an amended plan consistent with the ruling in the Adversary Proceeding be filed on or before October 1, 1999. See Docket No. 135. Debtor sought a stay of the requirement that he file a plan pending the outcome of his appeal of the decision in the Adversary Proceeding. Said request was denied, although the Debtor was given an extension until November 2, 1999, to file an amended plan. See Docket Nos. 135 and 138.

On November 2, 1999, Debtor filed his First Amended Chapter 13 Plan (the "First Amended Plan"). See Docket No. 139. The First Amended Plan provided that the Debtor would increase his payments during months 15 through 60.[11] In addition, the First Amended Plan ostensibly called for the payment in full (without interest) of the attorneys' fees awarded to Ms. Polishuk in the Divorce Action, as well as the credit card debt which Mr. Polishuk had been ordered to pay therein.[12] With respect to the claims of the IRS and the OTC, the First Amended Plan recognized that the actual amount of the claims was

---

10. The Plan also provided for the retention by Mr. Polishuk of the A.G. Edwards Account.:

> It is Debtor's intent by this Plan that, to the extent possible, his interest in the A.G. Edwards Stock Portfolio Account be maintained for his benefit, and protected from the claims of Creditors. However, if at the end of the Plan, payments and additional funds committed hereto are not sufficient to satisfy at least the priority claims, Debtor will either liquidate the A.G. Edwards Account and/or will arrange for independent financing to pay said claims.

See Docket No. 111.

11. Debtor based his ability to increase his plan payments on the expected termination of his obligation to pay child support and an anticipated increase in income.

12. Under the terms of the First Amended Plan, the attorney fees owed to Ms. Polishuk were to be paid under the following payment schedule:

| Months 1—9: | $50.00 per month |
| Months 10—14: | $70.00 per month |
| Months 15—17: | $191.00 per month |
| Months 18—35: | $429.50 per month |
| Months 36—60: | $598.80 per month |

These payments totaled $23,904.70, an amount far less than the amount of the attorneys' fee award ($44,910.00). Debtor proposed to pay the balance of these fees at the end of the plan term through liquidation of the A.G. Edwards Account or through "third party financing." Similar shortfalls existed with respect to the proposed credit card payments.

more than that specified in the Plan, but contained the same vague provisions for satisfaction of those claims.

The First Amended Plan drew objections from Ms. Polishuk and the Chapter 13 Trustee. Among other things, both parties objected on the basis that the First Amended Plan was not feasible. *See Docket Nos. 142 and 143.* A hearing on confirmation of the First Amended Plan was held on December 21, 1999. At that hearing, counsel for Mr. Polishuk stated that the First Amended Plan was not ready for confirmation, and requested an opportunity to file another amended plan. The Chapter 13 Trustee and Ms. Polishuk consented. This Court, by minute order, denied confirmation of the First Amended Plan, and ordered Mr. Polishuk to file a second amended plan on or before January 7, 2000. *See Docket No. 145M.*

Debtor filed his Second Amended Chapter 13 Plan (the "Second Amended Plan") on January 4, 2000. *See Docket No. 146.* The major difference between the Second Amended Plan and the First Amended Plan was an increase in the amount of professional fees to be paid to J & S and Mr. Howard. The treatment of all other claims remained substantially the same. The Second Amended Plan drew objections from Ms. Polishuk and the Chapter 13 Trustee. A hearing on confirmation of the Second Amended Plan was scheduled for February 24, 2000. Shortly prior to the hearing, Mr. Polishuk filed a notice of conversion under § 1307 of the Bankruptcy Code, converting his case to a case under Chapter 7. *See Docket No. 164.* As a result of the conversion, the confirmation hearing was stricken as moot.

On May 24, 2000, the Chapter 13 Trustee filed his "Final Report and Final Account and Application to Discharge Chapter 13 Trustee" (the "Chapter 13 Final Report"). *See Docket No. 185.* In the Chapter 13 Final Report, the Trustee stated that between April 19, 1999, and February 18, 2000, he had received a total of $4,160.14 in payments from Mr. Polishuk.

The Chapter 13 Final Report also reflected that under the terms of the Chapter 13 plans filed herein, a total of $4,866.68 was due, indicating that Mr. Polishuk was approximately $706.54 in arrears in his payments to the Chapter 13 Trustee at the time of conversion. No objections were made to the Chapter 13 Final Report, and it was approved by order of this Court entered on August 1, 2000. *See Docket No. 189.* The Chapter 13 Trustee then refunded the sum of $4,160.14 to Mr. Polishuk.

*The Case as a Chapter 7 Case*

Upon conversion of the case to Chapter 7, Mr. Bradshaw was appointed to serve as Trustee. The most recent Interim Asset Report filed by Mr. Bradshaw indicates he has collected and reduced to cash the sum of $42,069.65 in estate assets, representing the liquidation of the A.G. Edwards Account. In addition, Mr. Bradshaw expects to collect an additional $15,000.00 in settlement of certain claims held by the estate. *See Docket No. 202.* The Trustee anticipates that all such sums shall be necessary for the payment of priority claims, noting that the amount of the priority claim awarded to Ms. Polishuk in the Adversary Proceeding exceeds the amount of the monies which he expects to collect.

Mr. Polishuk received his discharge in bankruptcy on June 8, 2000. *See Docket No. 208.* No adversary proceedings are pending at the present time. The issues left to be resolved in this case relate to the payment of fees to J & S and/or Mr. Howard.

*The J & S Application*

In the Jarboe Application, J & S seek the payment of fees in the amount of $18,737.00, together with reimbursement of expenses actually incurred in the amount of $1,370.06. The Jarboe Application spans the time frame from July 1, 1998, when J & S was first contacted by the Debtor regarding assuming his representation, through June 9, 1999. No compensation is sought for any time spent by

J & S after the case was converted to Chapter 7. In the Jarboe Application, J & S breaks its time spent into the following categories:

1. General Bankruptcy Case Administration—26.3 hours
2. Objections (mostly relating to Ms. Polishuk)—49.3 hours
3. Settlement (relating to Ms. Polishuk and the A.G. Edwards Account)—9.5 hours
4. Adversary Complaint (relating to the dischargeability of the obligations owed by Mr. Polishuk under the Divorce Decree)—43.6 hours
5. Plan Preparation (both in Chapter 11 and Chapter 13)—43.6 hours

Included in this time is approximately 19.65 hours spent in litigation or negotiation with TMCC over Debtor's motor vehicle. In addition, the Jarboe Application reflects an additional 35.55 hours of time spent for which no compensation is sought. Neither Mr. Bradshaw nor Ms. Polishuk have disputed that the time recorded was actually spent, nor have they raised an issue as to either the amount of time spent on any particular task or the hourly rates charged for such services.

*The Howard Application*

In his application, Mr. Howard seeks to recover $5,200.00 in fees and $493.19 in expenses, all of which relate to his representation of Mr. Polishuk in the Divorce Action. All of the time was spent between June 13, 1998, two days before the trial of the Divorce Action commenced, and October 8, 1998, when Mr. Howard filed a petition in error appealing the Divorce Decree. Throughout the trial of the Divorce Action, Mr. Howard billed only his time spent in trial, and did not bill the time spent during the evenings preparing for the next day's activities. Other than the trial of the Divorce Action, the time entries in the Howard Application reflect time spent by Mr. Howard on issues relating to child custody and visitation, as well as litigation regarding the order entered by

this Court authorizing his retention. The time for which Mr. Howard seeks compensation totals 52.0 hours. Mr. Howard seeks compensation at his normal and customary rate of $100.00 per hour. Mr. Howard has not sought any fees for the preparation or presentation of the Howard Application. Neither Mr. Bradshaw nor Ms. Polishuk have disputed that the time recorded was actually spent, nor have they raised an issue as to either the amount of time spent on any particular task or the hourly rates charged for such services.

To the extent the "Conclusions of Law" contain any items which should more appropriately be considered "Findings of Fact," such items are incorporated herein by this reference.

## Conclusions of Law

As the Court considers an award of fees, it cannot help but reflect on the overall posture of this case. There are very strong indicia that Mr. Polishuk sought the protection of this Court for the main purpose of deferring and/or defeating the efforts of the State Court in the Divorce Action. This case was filed one business day before trial of the Divorce Action was scheduled to commence in State Court. Mr. Polishuk sought to delay trial of the Divorce Action through its removal to this Court. After he received an adverse ruling in the Divorce Action, he sought to effectively overturn the Divorce Decree in the Adversary Proceeding. Upon receipt of an adverse ruling in the Adversary Proceeding, Mr. Polishuk appealed, and sought to postpone all further action in this bankruptcy case until his appeal was concluded. After the Court denied his request for delay, Mr. Polishuk proposed plans that were neither feasible nor confirmable, and ultimately converted the case to Chapter 7. The Court is hard pressed to find that Mr. Polishuk ever held a sincere desire to reorganize.

*Ability of Court to Award Compensation to J & S and/or Mr. Howard*

■ Mr. Bradshaw and Ms. Polishuk both argue that, as a result of the conver-

sion of this case to a case under Chapter 7 of the Code, this Court is precluded as a matter of law from awarding fees and expenses to either J & S or Mr. Howard. In making this argument, Mr. Bradshaw and Ms. Polishuk rely upon § 330(a)(1). In its present form, § 330(a)(1) reads as follows:

After notice to the parties in interest and the United States Trustee and a hearing, and subject to sections 326, 328, and 329, the court may award to a trustee, an examiner, a professional person employed under section 327 or 1103—

(A) reasonable compensation for actual, necessary services rendered by the trustee, examiner, professional person, or attorney and by any paraprofessional person employed by any such person; and

(B) reimbursement for actual, necessary expenses.

§ 330(a)(1). Prior to its amendment in 1994, the phrase "or to the debtor's attorney" appeared immediately prior to subsection (A). 3 *Collier on Bankruptcy* ¶ 330.LH[5] (Lawrence P. King, ed., 15th ed. rev.2000). The Trustee and Ms. Polishuk argue that the deletion of the phrase "or the debtor's attorney" signals the intent of Congress that counsel for a debtor may not as a matter of law be compensated with proceeds from a Chapter 7 estate.

Since the amendment of § 330(a)(1), courts have split upon the issue of whether counsel for a debtor may be compensated from a bankruptcy estate for services performed for the debtor in a Chapter 7 case or in a Chapter 11 case where the debtor is no longer the debtor-in possession. *Compare, Andrews & Kurth, L.L.P. v. Family Snacks, Inc. (In re Pro–Snax Distributors, Inc.)*, 157 F.3d 414 (5th Cir.1998) (holding that counsel for Chapter 11 debtor could not be paid fees and expenses from estate for services performed for the debtor after the appointment of a Chapter 11 trustee); *and Inglesby, Falligant, Horne, Courington & Nash, P.C. v. Moore (In re American Steel Product, Inc.)*, 197 F.3d 1354 (11th Cir.1999) (declining to award fees to counsel for debtor in Chapter 7 case and while debtor was not in possession in Chapter 11 case); *with United States Trustee v. Garvey, Schubert and Barer (In re Century Cleaning Services, Inc.,)*, 195 F.3d 1053 (9th Cir.1999) (allowing compensation to counsel for Chapter 7 debtor under § 330(a)(1)).[13] The difference between those cases and the case at bar is that in each case, counsel was seeking compensation for services performed for the debtor while: (1) the case was a Chapter 7 case; or (2) the debtor was not acting as a debtor in possession. In the present case, both J & S and Mr. Howard seek compensation for services performed for Mr. Polishuk during the time that he acted as debtor in possession, or while he was acting as a debtor under Chapter 13. Accordingly, to the extent § 330(a)(1) restricts the ability of counsel for a debtor to be paid from a Chapter 7 estate, said restriction is not applicable to the facts of the case at bar.[14]

**13.** The Court notes that in *Inglesby, Falligant, Horne, Courington & Nash, P.C. v. Moore (In re American Steel Product, Inc.)*, supra, the Eleventh Circuit Court of Appeals was asked to address the issue of whether the applicant could be compensated from the bankruptcy estate for services rendered while the debtor served as a debtor in possession. Said court expressly refused to reach the issue, noting that the issue was neither raised before or considered by the district court. *See id.*, 197 F.3d at 1357.

**14.** In addition, the provisions for distribution of assets in Chapter 7 cases indicate that counsel for a debtor in possession (or Chapter

13 debtor) prior to conversion may be paid from proceeds of the Chapter 7 estate. Under § 726(a), a first priority is afforded all claims entitled to priority under § 507. Claims for "administrative expenses incurred under section 503(b)" are included in this priority. *See* § 507(a). Section 503(b)(2) includes as an administrative expense "compensation and reimbursement awarded under section 330(a) of this title." *See* § 503(b)(2). Section 726(b) provides that:

Payment on claims of a kind specified in paragraph (1), (2), (3), (4), (5), (6), (7), or (8) of section 507(a) of this title, or in paragraph (2), (3), (4), or (5) of subsection

*Benefit*

 The Trustee and Ms. Polishuk both contend that even if J & S and/or Mr. Howard are eligible for an award of fees, no award should be made in this case because their services did not benefit the bankruptcy estate.[15] This Court has previously ruled that the "threshold issue" in determining whether fees and expenses should be awarded to counsel is whether the services conferred a benefit:

> The "threshold issue" for this Court to consider as it rules on the Second Application is whether the services of Crowe benefitted the bankruptcy estate. *In re Lederman Enterprises, Inc.*, 997 F.2d 1321, 1323 (10th Cir.1993). Unless the Court determines that a benefit was conferred upon the estate, the inquiry goes no further, and the fees are not compensable.

*In re Reconversion Technologies, Inc.*, 216 B.R. 46, 52 (Bankr.N.D.Okla.1997). The Court is thus left to define what type and manner of services performed constitute a "benefit," either to the bankruptcy estate or (during the time this case was a Chapter 13 case) to Mr. Polishuk. Although at first blush this would seem easy, it is in reality a complex and problematic task.

 The Bankruptcy Code defines "benefit" as

> whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title.

§ 330(a)(3)(C). Courts which have interpreted this statute have noted that courts are to consider the necessity of the services at the time they were rendered, not at the time the court reviews the application. *See In re City Mattress, Inc.*, 174 B.R. 23, 26 (Bankr.W.D.N.Y.1994) ("The key issue is whether the services were necessary, not whether the debtor's activities were, in hindsight, necessary to achieve whatever outcome eventually occurs."). In order to benefit the estate,

---

(a) of this section, shall be made pro rata among claims of the kind specified in each such particular paragraph, *except that in a case that has been converted to this chapter under section 1009, 1112, 1208, or 1307 of this title, a claim allowed under section 503(b) of this title incurred under this chapter after such conversion has priority over a claim allowed under section 503(b) of this title incurred under any other chapter of this title or under this chapter before such conversion and over any expenses of a custodian superseded under section 543 of this title.* § 726(b) (emphasis added). The section contemplates payment of § 503(b) expenses incurred in a Chapter 11 or 13 case which has been converted out of the proceeds of the Chapter 7 estate. As noted in the Committee Report:

> Subsection (b) follows current law. It specifies that claims within a particular class are to be paid pro rata. This provision will apply, of course, only when there are inadequate funds to pay the holders of claims of a particular class in full. *The exception found in the section, which also follows current law, specifies that liquidation administrative expenses are to be paid ahead of reorganization administrative expenses if the case has been converted from a reorganization case to a liquidation case, or from an*

*individual repayment plan case to a liquidation case.*
S. Rep. No. 95–989, at 97 (1978), U.S.Code Cong. & Admin.News 1978, at 5787, 5883, *reprinted in Collier on Bankruptcy* app. D at pt. 4(e)(1) (Lawrence P. King, ed., 15th ed. rev.2000) (emphasis added).

**15.** In addition, both parties argue that as a matter of law, no compensation may be awarded for services which inured solely to the benefit of Mr. Polishuk. The position which they take is, at least in part, in error. Section 330(a)(4)(B) of the Code provides that

> In a chapter 12 or chapter 13 case in which the debtor is an individual, the court may allow reasonable compensation to the debtor's attorney for representing the interests of the debtor in connection with the bankruptcy case based on a consideration of the benefit and necessity of such services to the debtor and the other factors set forth in this section.

§ 330(a)(4)(B). This case was pending as a Chapter 13 case for a period of almost one year. J & S acted as attorneys for Mr. Polishuk and seek compensation for services rendered during that period. Under § 330(a)(4)(B), their services rendered during that period need not benefit the bankruptcy estate so long as they benefit the debtor.

the services rendered must relate to a realistically obtainable goal. Counsel for a debtor or debtor in possession will not be compensated for time spent in preparation of a plan which has no realistic hope of confirmation. *See Rubner & Kutner, P.C. v. U.S. Trustee (In re Lederman Enterprises, Inc.),* 997 F.2d 1321, 1324 (10th Cir.1993) (where inability of debtor to propose plan "should have been apparent to counsel from the commencement of the case," no compensation awarded); *accord, Keate v. Miller (In re Kohl),* 95 F.3d 713, 714–715 (8th Cir.1996); *see also In re Saturley,* 131 B.R. 509, 521 (Bankr. D.Me.1991) ("... futile efforts aimed at achieving unattainable objectives are unreasonable. Fees generated in tilting at windmills will be disallowed.") (citations omitted). Finally, the fact that a debtor derives personal benefit from the delay of collection efforts against him or her due to the bankruptcy case does not constitute a benefit for purposes of awarding compensation. *See Bachman v. Pelofsky (In re Peterson),* 251 B.R. 359, 365 (8th Cir. BAP 2000) (affirming refusal to award fee where "efforts resulted in no benefit to the debtor under § 330(a)(4)(B), other than to cause delay in payment.").

*Time Spent in Formulation of Plans*

 J & S seeks compensation for 43.6 hours spent in consideration and preparation of reorganization plans while this case was in Chapter 11 and Chapter 13. Looking at the facts, the Court is unable to find that J & S could have reasonably believed that Mr. Polishuk had a realistic hope of reorganization under any chapter of the Bankruptcy Code. The initial cash flow projections forecast few if any funds available for debt service; the Chapter 11 monthly reports revealed that Debtor fell far short of even these meager projections. All of this information was readily available to J & S. Upon conversion to Chapter 13, J & S prepared and filed a series of plans which called for significant increases in monthly payments, as well as additional income from sources other than Mr. Polishuk's regular income. Moreover, each Chapter 13 plan proposed on behalf of Mr. Polishuk made no real provision for the payment of priority tax claims; payment of these claims was to be deferred to an unspecified time when income from an unspecified source would appear in some unspecified manner. Neither Debtor nor J & S ever asked the Court to consider confirmation of these plans; instead, they asked for more time to file new plans, and eventually voluntarily converted the case to Chapter 7. Given these facts, it is difficult for the Court to see how the time spent by J & S in general administrative matters or in preparation of a plan was of any true benefit either to Mr. Polishuk or his bankruptcy estate.

*Time Spent Litigating with TMCC*

 The Court believes that the same is true with respect to the 19.65 hours spent by J & S litigating and/or negotiating with TMCC so that Mr. Polishuk could retain his vehicle. The effort made by J & S to enable Mr. Polishuk to keep this vehicle was almost herculean in nature. For whatever reason, Mr. Polishuk did not just want a vehicle, he wanted *this* vehicle. While he may have needed a vehicle to get to and from work and to perform other personal and business activities, there is no showing that he needed this particular vehicle. The amount of the monthly lease payments ($379.86) were sufficient to provide for acquisition of a different vehicle. The Court concludes that these efforts were not reasonable or beneficial, and should not be compensated with proceeds of the bankruptcy estate.

*Time Spent in Litigation and Negotiation with Ms. Polishuk*

The balance of the time spent by J & S was spent either in litigation or negotiation with Ms. Polishuk. As a result of the litigation, the obligations of Mr. Polishuk to Ms. Polishuk under the Divorce Decree were determined to be non-dischargeable

and were granted priority status. As a result of the negotiations, the estate obtained full ownership of the A.G. Edwards Account. J & S contends that litigation of the nature of the claim of Ms. Polishuk was necessary to the formulation of a plan, and that the estate benefitted by the acquisition of the A.G. Edwards Account free and clear of any claim or interest of Ms. Polishuk.[16] The Court rejects each of these arguments.

■ The financial performance of Mr. Polishuk as reflected in the financial reports filed while the case was a Chapter 11, together with his failure to make all of the payments required while the case was a Chapter 13, demonstrate that there was no real likelihood that a confirmable plan could ever have been proposed, regardless of the nature of Ms. Polishuk's claim. Absent the likelihood of a confirmable plan, any efforts regarding claims classification were of no consequence. Thus, the fees incurred in this area should not be compensated from the estate.

■ In addition, the plans which were filed make it clear that Mr. Polishuk sought to retain full ownership interest in the A.G. Edwards Account for his own purposes, and not for the benefit of his creditors. Those plans drew the objections of both the Chapter 13 Trustee and Ms. Polishuk, and were never confirmed. The Court has serious doubts as to whether Mr. Polishuk ever intended to do anything other than defeat the claims of his ex-wife, and finds that such efforts operated neither to the benefit of Mr. Polishuk or the bankruptcy estate. As at least one court has held, "[t]he Debtor cannot be permitted to act out his litigious impulses at the expense of the creditors of the Debtor's estate." *In re Rothman*, 206 B.R. 99, 111 (Bankr.E.D.Pa.1997). Accordingly, the Court declines to award any fees or expenses to J & S.

*Payment of Fees to Mr. Howard*

■ The fees owed to Mr. Howard are perhaps the most troubling for the Court. At the time Mr. Howard performed his services, the case was a Chapter 11 case; thus, § 330(a)(4)(B) does not apply, and the Court must concern itself with whether the services of Mr. Howard benefitted the bankruptcy estate. This Court has consistently held that issues relating to divorce (including property division, custody, alimony and child support) are best left to the state courts, and has refused to entertain such actions. *See In re Nichols*, 223 B.R. 353 (Bankr.N.D.Okla.1998). Mr. Howard "stepped into the breach" on the eve of trial of the Divorce Action. There have been no complaints regarding the quality of his services or the time spent thereon. To the extent that the trial of the Divorce Action resulted in the division of property between Mr. Polishuk and Ms. Polishuk, the estate was benefitted. Only after such a property division could there be a determination as to what items of marital property were property of the estate.

The Howard Application does not contain great detail regarding the efforts of Mr. Howard. However, the testimony of Mr. Howard indicated that he did not bill Mr. Polishuk for any out-of-court time during the trial of the Divorce Action. The hourly rate of $100.00 sought by Mr. Howard is reasonable. The bankruptcy case could not proceed unless and until trial of the Divorce Action was completed. Accordingly, the Court is compelled to find that the services of Mr. Howard which relate to the trial of the Divorce Action, at the time they were performed, were "necessary to the administration of the estate" for purposes of § 330(a)(3)(C). The balance of the fees sought relate to the appeal of the Divorce Decree, as well as other issues relating to child custody and visitation. Said fees are not compensable from

---

**16.** All of the negotiations and the settlement with respect to the A.G. Edwards Account took place while this case was a Chapter 11 case; accordingly, the Court only considers whether the services were of benefit to the estate.

the bankruptcy estate *See In re Dawson,* 180 B.R. 478, 479 (Bankr.E.D.Tex.1994) ("Only the services that assist a debtor in performing the debtor's legal duties as opposed to exercising his legal privileges are compensable from the estate."). Mr. Howard spent a total of 36.3 hours in preparation for and attendance at the trial of the Divorce Action, and in drafting findings of fact and conclusions of law relating to the Divorce Decree. Accordingly, the Court awards Mr. Howard the sum of $3,630.00 in fees and grants the same the appropriate priority under § 503(b)(1). With respect to the reimbursement of expenses requested by Mr. Howard, the Court is unable to ascertain which of those expenses related to the trial of the Divorce Action, and thus declines to award the same to Mr. Howard, with the exception of $26.00 in parking expenses, which Mr. Howard testified were incurred during the trial of the Divorce Action.[17]

The Court is aware that the effect of its decision is to use monies that otherwise would go to the support and maintenance of Ms. Polishuk to pay the professional fees which one can argue should be borne by Mr. Polishuk. The Court struggles with this result. However, were the Court to find that fees which were reasonable, necessary and beneficial should not be paid because of the presence of a claim with a lower statutory priority, it would be judicially revising the priorities set forth in §§ 503 and 507. The Court is not permitted such indulgences.

### Conclusion

For the reasons set forth above, the Jarboe Application is denied. The Howard Application is granted in part. Mr. Howard is awarded fees of $3,630.00 and expenses of $26.00. Separate judgments consistent with this Memorandum Opinion are issued concurrently herewith.

---

**17.** The Howard Application reflects that all such expenses were incurred on October 8, 1998, well after the trial of the Divorce Action.