# United States Bankruptcy Appellate Panel
## FOR THE EIGHTH CIRCUIT

---

00-6006NE

---

| | |
|---|---|
| In re: | * |
| | * |
| Craig Peterson | * |
| | * |
| Debtor | * |
| | * |
| James Edward Bachman | * |
| | *  Appeal from the United States |
| Movant - Appellant | *  Bankruptcy Court for the |
| | *  District of Nebraska |
| v. | * |
| | * |
| Joel Pelofsky | * |
| | * |
| U.S. Trustee - Appellee | * |

---

Submitted: July 13, 2000
Filed: August 7, 2000

---

Before KOGER, Chief Judge, DREHER and WILLIAM A. HILL Bankruptcy Judges.

---

KOGER, Chief Judge.

James Edward Bachman, counsel for the debtor, appeals the Order of the Bankruptcy Court[1] which granted Bachman's request for attorney fees in a reduced amount. For the reasons that follow, we affirm.

---

[1] The Honorable John C. Minahan, United States Bankruptcy Judge for the District of Nebraska.

## Factual Background

Craig Peterson originally hired Bachman to represent him regarding certain sales tax deficiencies that had been assessed against him for the period of 1991 to 1997 by the Nebraska Department of Revenue. Shortly after Peterson retained Bachman to represent him in the matter with the Nebraska Department of Revenue, the Madison County Attorney criminally charged Peterson with offenses relating to the tax deficiencies. Peterson's business records were seized by the Nebraska State Patrol at the time of Peterson's arrest for the criminal tax charges.

Because Peterson had not timely appealed some of the assessments, they had become final under Nebraska law and could only be appealed after he paid them. Consequently, on July 16, 1997, Bachman filed a Chapter 13 bankruptcy petition on Peterson's behalf for the express purpose of challenging the tax assessments by the Nebraska Department of Revenue. In November 1997, while his bankruptcy case was pending, Peterson pled guilty to one count relating to his failure to pay and file the sales tax returns and he was sentenced in the spring of 1998. Due to some delay caused by the State Patrol's misplacement of Peterson's business records, the records were not released by the State Patrol until September 1998.

In addition, Bachman was injured in August 1998 and was unable to effectively perform as Peterson's attorney until November 1998. Bachman's wife was able, however, to drive Bachman to the office of the Nebraska Department of Revenue during his period of recovery to deliver the debtor's records so that the Department could determine whether the assessments which totaled over $125,000 had been grossly overstated.

In November 1998, the Department convinced Bachman that the assessments against the debtor were valid. In addition, the Internal Revenue Service filed a proof of claim in the debtor's bankruptcy case for priority taxes in the amount of $40,000. Bachman attempted to informally negotiate reduced claims with both the IRS and the Nebraska Department of Revenue but was unsuccessful in his negotiations and the Nebraska Department of Revenue formally declined Bachman's offer in June 1999, refusing to reduce the assessments. Meanwhile, because of these problems, the debtor was never able to propose a confirmable plan. After the Nebraska Department refused to reduce the assessments, Bachman determined that the debtor would not be able to fund a Chapter 13 plan and in July 1999, he converted the case to Chapter 7.

2

In the meantime, Bachman filed his first request for fees with the Bankruptcy Court in December 1997. In that application, he indicated that he had already been paid $943.75 and requested an additional $1,241.96 in fees and expenses. He further requested that the fees be paid prior to plan confirmation. The Chapter 13 Trustee opposed the application, asserting, among other things, that the circumstances did not warrant payment prior to plan confirmation. The Bankruptcy Court approved the fees up to the retainer and denied the balance without prejudice to the balance of the fees being approved at the time of the final fee application.

In May 1998, Bachman again filed a Chapter 13 fee application, this time requesting total fees and expenses in the amount of $3,812.50, less the $943.75 retainer, for a total of $2,899.07, to be paid under the plan. In this application, Bachman stated he had expended 30.5 hours and that he anticipated expending an additional 25 hours on the case due to the tax problems. The Chapter 13 Trustee filed a comment on this application wherein she stated that the application appeared to request compensation for actual and necessary services. The Court apparently did not rule on this application.

In December 1998, Bachman again requested fees, this time totaling $6,737.50, less the retainer. He again asserted that he would require an additional 25 hours to complete the case. The Chapter 13 Trustee objected this time, primarily on the ground that if payment were approved prior to plan confirmation, Bachman would receive all of the funds held in the Chapter 13 estate at the time. The Trustee also objected on the ground that some of the creditors had not received notice of the fee request. However, the Chapter 13 Trustee conceded that it had been a difficult case and that it had been necessary for Bachman to expend more than the usual amount of time required on a Chapter 13 case. After Bachman corrected the notice problems, the Chapter 13 Trustee then filed an additional comment indicating she believed that due to the complexities involved in the case, the case justified allowance of fees greater than the usual fees requested in Chapter 13 cases. Nevertheless, the Bankruptcy Court denied the fee request at that time because an amended plan had not been filed as ordered. The Court indicated it would reconsider the fee application upon confirmation.

On August 5, 1999, after the case had been converted to Chapter 7, Bachman filed a request for his fees as an administrative expense. He attached a statement of account to this motion which showed he

3

had expended a total of 66.6 hours at $125.00 per hour for a total of $8,325.00 in fees. After making certain adjustments to that figure, Bachman's total request was $7,419.15.[2]

The U.S. Trustee filed an objection to this request. The U.S. Trustee conceded that the case had been more complicated than a typical Chapter 13 case, but contended that the total amount was excessive or unreasonable in light of the Bankruptcy Appellate Panel's recent decision in In re McKeeman, 236 B.R. 667 (B.A.P. 8th Cir. 1999).

The Bankruptcy Court conducted a hearing and after taking the matter under advisement, entered a Journal Entry allowing reduced fees in the amount of $1,980.00, plus expenses in the amount of $217.90. The Court issued specific findings wherein it found that after considering each of Bachman's fee applications and reviewing the bankruptcy file, the fees requested were excessive. The Court conducted a lodestar analysis, determining that reasonable compensation for a debtor's attorney in a Nebraska consumer Chapter 13 case was typically $110.00 per hour for ten hours, resulting in a lodestar amount of $1,100.00. The Court concluded that although Bachman asserted that the case was unique in that it involved primarily debt for taxes, Bachman had not identified any substantial tax related legal services provided to the estate. The Court found that the fee applications did not indicate that the case was anything more than a routine Chapter 13 case with few complexities. The Court further noted that there were only seven creditors and there had been no disputes with any of them, other than with the two taxing authorities, and that those disputes involved only minimal litigation and resulted in the objections to those claims either being withdrawn or overruled. Moreover, the Court specifically found that although some extra time had been expended by counsel in drafting the plans and dealing with the taxing authorities, there was no indication that the case had involved any novel or difficult legal questions. According to the Bankruptcy Court, "In reviewing Mr. Bachman's fee applications, the services provided for in the applications are not unnecessary or duplicative in themselves for a Chapter 13 case, but the time expended for those services is excessive."

---

[2] Bachman filed an Amended Request for An Administrative Expense Advance in which Bachman indicated that the original request had contained an error and overstated the amount due by $112.50. As a result, Bachman's request for payment of fees totaled $7,306.65.

In addition, the Court also found that the fee application itself was not detailed as to the services that were provided, noting that entries for multiple services were grouped and that excessive time was billed for individual tasks, giving specific examples of such instances. The Court also concluded that the over twelve hours of travel time billed to the client at the normal hourly rate of $125.00 was excessive. The Court further found that some of the claimed services had provided no benefit to the estate under § 330(a)(4)(B). Finally, after noting that the typical Chapter 13 case would require ten hours, the Court concluded that the reasonable amount of time expended in this case was eighteen hours at $110.00 per hour for a lodestar amount of $1,980.00.

Bachman filed a motion for new trial or to amend or alter the judgment and accordingly, the Court conducted a second hearing. Bachman submitted an affidavit explaining the time he had spent on the debtor's case, as well as a more detailed billing statement, and he presented oral argument regarding his requested fees at the second hearing.

The Bankruptcy Court entered a second Journal Entry wherein the Court noted that despite the fact that all of the "new" evidence Bachman had submitted at the second hearing had been available at the first hearing, the Court would consider it anyway. The Court found that contrary to one of the findings in the first Journal Entry, this was a Chapter 13 business case rather than an individual consumer case. The Court awarded Bachman an additional six hours at $110.00, for a total of $660.00, which the Court concluded was a reasonable lodestar calculation for the services Bachman had performed in obtaining a new sales tax license for the debtor's business. The Court concluded that this additional amount properly and reasonably compensated Bachman in light of the fact that this was a business case and that he had to obtain a new sales tax license. Bachman appeals this Order.

Discussion

The Bankruptcy Appellate Panel of this Circuit recently issued an opinion involving nearly identical issues and parties. See In re McKeeman, 236 B.R. 667 (B.A.P. 8th Cir. 1999).[3] Here, Bachman is, in effect, rehashing the very same arguments that he argued in McKeeman. Not only do we think the decision in McKeeman was correct under the Code and applicable Eighth Circuit precedent, we are bound by our

---

[3] In re McKeeman involved the same attorney, Bachman, and the same bankruptcy judge as this case does. It also involved a Chapter 13 case which had a tax problem.

previous decisions in any event.  See Nelson v. Mickelson (In re Pfleghaar), 215 B.R. 394, 396 (B.A.P. 8th Cir. 1997).

In McKeeman we said:

The Bankruptcy Appellate Panel of this Circuit has twice previously addressed appeals from denial of attorneys' fees and has well stated the applicable standard of review, as well as, the analysis required from a bankruptcy court when considering professional fees under 11 U.S.C. § 330. See Nelson v. Mickelson (In re Pfleghaar), 215 B.R. 394 (8th Cir. BAP 1997); Chamberlain v. Kula (In re Kula), 213 B.R. 729 (8th Cir. BAP 1997).  On appeal, we review the bankruptcy court's findings of fact, whether based upon oral or documentary evidence, for clear error, and its legal conclusions are reviewed de novo. Fed.R.Bankr.P. 8013; First Nat'l Bank of Olathe v. Pontow, 111 F.3d 604, 609 (8th Cir.1997).  Decisions regarding an award of fees are subject to the abuse of discretion standard.  Grunewaldt v. Mutual Life Ins. Co. (In re Coones Ranch, Inc.), 7 F.3d 740, 744 (8th Cir.1993).  An abuse of discretion occurs in this context "if the bankruptcy judge fails to apply the proper legal standard, fails to follow proper procedures in making the determination, or bases an award upon findings of fact that are clearly erroneous." Agate Holdings, Inc. v. Ceresota Mill L.P. (In re Ceresota Mill L.P.), 211 B.R. 315, 317 (8th Cir. BAP 1997).  To be clearly erroneous, after reviewing the record, we must be left with the definite and firm impression that a mistake has been committed.  In re Waugh, 95 F.3d 706, 711 (8th Cir.1996).  Finally, our review is limited in deference to the bankruptcy judge's familiarity with the work performed by the professional. In re Grady, 618 F.2d 19, 20 (8th Cir.1980). See Kula, at 735.

In re McKeeman, 236 B.R. at 670.

Section 330 governs the allowance of attorneys' fees and permits the court, on its own motion or on the motion of a trustee or other party in interest, to award compensation that is less than the amount requested.  Id.  We have consistently held that the lodestar method, calculated by multiplying the reasonable hourly rate by the reasonable number of hours required to represent the debtor in the case, is the appropriate approach for determining reasonable compensation under § 330.  Id. at 671; Pfleghaar, 215 B.R. at 396; Chamberlain, 213 B.R. at 736.  To determine the reasonable rates and hours, § 330(a)(3)(A) directs courts to consider factors including:

– the time spent;

– the rates charged;

– the necessity of the services for administration of the case;

6

– the reasonableness of the amount of time spent in light of the complexity, importance and nature of the problem, issue or task addressed; and

– the reasonableness of the requested compensation compared to the customary compensation charged by comparably skilled practitioners in non-bankruptcy cases.

McKeeman, 236 B.R. at 671. We have held that courts may also apply the similar criteria set forth in Johnson v. Georgia Highway Express, Inc., 488 F.2d 714 (5th Cir. 1974), to determine the reasonableness of attorneys' fees. Id.; Chamberlain, 213 B.R. at 738. Finally, § 330(a)(4)(B) provides that in a Chapter 13 case in which the debtor is an individual, "the court may award reasonable compensation to the debtor's attorney for representing the interests of the debtor in connection with the bankruptcy case based on a consideration of the benefit and necessity of such services to the debtor and the other factors set forth in this section." Pfleghaar, 215 B.R. at 396.

The Bankruptcy Court in this case conducted a thorough analysis under these tests and plainly applied the correct legal standard. Thus, the question before us is whether the Court clearly erred in its factual findings under this analysis.

The evidence presented at the first hearing consisted of Bachman's billing statement which he had submitted with the Application; Bachman's own affidavit wherein he outlined his background and experience, his overhead costs, the circumstances surrounding the tax problems and his injury, and his own knowledge that bankruptcy attorneys in Nebraska with his experience who represent creditors charge between $150.00 and $175.00 per hour; and the affidavit of James G. Egley, a Nebraska attorney who had referred the debtor to Bachman regarding his tax problems, which stated, among other things, that his firm routinely charges their clients for all travel time. At the second hearing, Bachman submitted another affidavit explaining some of his charges about which the Bankruptcy Court had expressed some concern in the first Journal Entry; a more detailed billing statement; and an affidavit by attorney Joseph M. Smith, the County Attorney for Madison County, pertaining to the tax evasion and sales tax permit problems.

7

Bachman argued at the hearings that because of the tax complications, the case necessitated a significant number of hours over what the typical Chapter 13 case requires. He contends that the Trustee offered no evidence to the contrary and that it was error for the Bankruptcy Court to apply its own independent judgment to conclude that both the hourly rate and the number of hours claimed were unreasonable, asserting that if decisions regarding the reasonable rates and number of hours are left to the absolute discretion of the court, "by its very nature you have an arbitrarily imposed fee."

As we have said, we addressed these very same arguments in McKeeman. We expressly held therein that the Bankruptcy Court did not arbitrarily impose a flat fee when it reduced the requested number of hours based on the nature of the case and reduced Bachman's hourly rate from the $125.00 he requested to the $110.00 allowed. Rather, we held that the Court in that case considered the reasonable rates and hours charged in Chapter 13 cases in its district and then applied those rates to that particular case. Id. at 671-72. We held that "[w]hen a bankruptcy court determines that a case presents routine Chapter 13 matters, the court may review the fees requested in light of fees typically charged, and may reduce the requested fees accordingly." Id. at 672. We concluded in McKeeman that it was not error for the court to reduce the hourly rate and the number of hours based on its determination of what was reasonable in light of the nature of the bankruptcy case. Id.

This is precisely what the Bankruptcy Court did in this case. The Court started with a lodestar calculation based on the typical routine Chapter 13 case in that district. The Court concluded that the case was, in fact, a fairly routine Chapter 13 case with few complexities. The Court explained this finding by commenting on the nature of the tax issues as well as the fact that there were only a few creditors and that there were no disputes with any creditors other than the taxing authorities. Moreover, the Court specifically noted that the tax issues did not result in any sort of protracted litigation and indicated that the negotiations with those authorities should not have required the significant number of hours Bachman claimed they did. Finally, the Court found that these efforts resulted in no benefit to the debtor under § 330(a)(4)(B), other than to cause delay in payment. Nevertheless, the Court then made two upward adjustments to the

8

lodestar calculation for routine Chapter 13 cases by allowing an additional number of hours which the Court determined were necessary to deal with the tax issues and plan confirmation problems and also to compensate Bachman for the services required in obtaining the sales tax license, specifically recognizing in its second Journal Entry that this was a business case rather than a consumer case.

Bachman takes strong issue with the Bankruptcy Court's finding that the case was a routine Chapter 13 case with few complexities and, as he did in the McKeeman case, Bachman contests the Bankruptcy Court's finding that he should not be compensated at his full hourly rate for travel time. However, we believe the Court supported its conclusions with specific findings pertaining to the nature of the case and we find no clear error in the Court's findings. "If the bankruptcy court's account of the evidence is plausible in light of the entire record viewed, it must be upheld even though we may have weighed the evidence differently had we been sitting as the trier of fact." Forbes v. Forbes (In re Forbes), 215 B.R. 183, 187 (B.A.P. 8th Cir. 1997) (citing Anderson, 470 U.S. at 573-74, 105 S.Ct. at 1511). Furthermore, despite Bachman's assertion that the Bankruptcy Court should not impose its own judgment regarding what constitutes a reasonable fee in a given case, several courts have held that "[j]udges are justified in relying upon their own knowledge of customary rates and experience concerning reasonable and proper fees, without the need for independent evidence." In re Pothoven, 84 B.R. 579, 583 (Bankr. S.D. Iowa 1988); see also In re U.S. Golf Corp., 639 F.2d 1197, 1206 (5th Cir. 1981) (trial courts are experts as to the reasonableness of attorneys' fees); Brown v. Culpepper, 561 F.2d 1177, 1177-78 (5th Cir. 1977) (same). As a result, we find no clear error in the Bankruptcy Court's conclusions regarding the reasonable hourly rate and number of hours required in this case. Furthermore, as we found in McKeeman, the decision to deny Bachman's request for his full hourly rate for travel time was within the Bankruptcy Court's discretion and we find no abuse of that discretion. Id. at 672-73.[4]

---

[4]    Since we expressly addressed Bachman's other legal and policy arguments regarding the compensability of travel time in McKeeman, repeating that discussion here will serve no beneficial purpose.

Finally, Bachman asserts that his due process rights were violated because neither the Trustee's objection nor the Bankruptcy Court informed him prior to the first hearing as to specific objections to his fee application. He asserts that although he became aware of the Court's specific objections following the Court's first Journal Entry, it was inherently unfair to require him to respond to those objections after the Court had already made its decision.

Specifically, the Trustee's objection to the Application stated, "While the United States Trustee acknowledges that many of the services performed by the applicant may have been necessary for the administration of this case at the time they were performed, it appears that the total amount of fees is excessive or unreasonable [pursuant to the BAP's opinion in McKeeman]." The Trustee also suggested that although the case was more complicated than a typical Chapter 13 case, the allowance of an administrative expense in the requested amount would substantially reduce or eliminate the distribution of any funds to creditors. The Trustee requested a hearing for the Court to review the lodestar factors and make a determination of allowable fees. The Court's notice of hearing on the objection noted no particular objections or concerns with the fee application.

Bachman relies primarily on In re Busy Beaver Bldg. Centers, Inc., 19 F.3d 833 (3rd Cir. 1994), for the proposition that he did not receive due process on his fee application. In Busy Beaver, the Bankruptcy Court, sua sponte and without notice or hearing, disallowed fees requested for the firm's paraprofessionals' services. In reversing the Bankruptcy Court's decision, the Third Circuit held:

> [I]f the court does disallow fees of a "good-faith applicant," the Code, see §§ 329(b), 330(a); see also Rule 2017(b) -- and perhaps even the dictates of due process, see U.S. CONST., amend. V -- mandates that the court allow the fee applicant an opportunity, should it be requested, to present evidence or argument that the fee application meets the prerequisites for compensation; canons of fairness militate against forfeiture of the requested fees simply because the court's audit of the application uncovers some ambiguity or objection. By good-faith applicant we mean to refer to a fee applicant who reasonably and in good faith attempts to comply with the applicable rules governing the format and substance of fee applications.

To make the hearing meaningful, the court should first apprise the applicant of the particular questions and objections it harbors, a role which the adversary in a statutory fee case would typically play. . . . Contrary to a typical adversarial proceeding, when the bankruptcy court clothed in its administrative robe fulfills its duty to review a fee application without the applicant being present the applicant cannot possibly know what evidence or legal theories the court is contemplating when it decides to disallow certain fees. Unless the applicant is afforded an opportunity to rebut or contest the court's conclusions, the applicant would unfairly and undesirably be deprived of the chance to respond to and assuage the court's questions and concerns. Besides, the bankruptcy bar might well react to a regime offering the applicant no chance to respond to the court's concerns by spending an inordinate amount of time preparing overly detailed fee applications, which time might be billable to the estate, in an effort to anticipate all the idiosyncracies and inconsistencies of review the divers bankruptcy judges might exhibit.

Id. at 846-47 (citations and footnotes omitted). We agree with the Busy Beaver Court that fee applicants are entitled to a meaningful hearing regarding the reasonableness of their requested fees. See Pfleghaar, 215 B.R. at 397; Chamberlain, 213 B.R. at 742-43. However, we believe Bachman was afforded a meaningful hearing in this case. Contrary to the situation in Busy Beaver, Bachman was afforded two full evidentiary hearings and oral argument following an objection made by the Trustee.

In addition, as the Trustee asserts, Bachman is an experienced bankruptcy practitioner in the District of Nebraska and following the Bankruptcy Court's detailed decision in In re Malewicki, 142 B.R. 353 (Bankr. D. Neb. 1992), and the decisions in McKeeman, Bachman's assertion that he could not anticipate the Bankruptcy Court's concerns with his fee application is somewhat spurious.

Moreover, even assuming Bachman did not have adequate notice of the Court's concerns pertaining to the fee application prior to the first Journal Entry disallowing some of the fees, he certainly had notice after it was entered and we reject Bachman's argument that he was denied due process because he was required to change the Court's mind after the fact. The record clearly indicates that the Court permitted Bachman significant leeway to present any new evidence at the second hearing, despite the fact that the evidence had been available at the time of the first hearing. The record also clearly shows that the Court considered the additional evidence and in fact did change part of its decision following the second

11

hearing: it specifically held that it had erroneously found that the case had been a consumer case rather than a business case and awarded additional fees accordingly.  As a result, we find that Bachman received due process in this case.

### Conclusion

In sum, we conclude that the Bankruptcy Court's decision was within the permissible range of choice and was not influenced by any mistake of law.  See Kern v. TXO Production Corp., 738 F.2d 967, 970 (8th Cir. 1984).  In other words, we cannot say that we are left with a "definite and firm impression that a mistake has been committed" by the Bankruptcy Court in this case,  Chamberlain, 213 B.R. at 735; In re Waugh, 95 F.3d 706, 711 (8th Cir. 1996), and as a result, the Bankruptcy Court's award of fees did not constitute an abuse of discretion.  The judgment, therefore, is affirmed.

A true copy.

Attest:

CLERK, U.S. BANKRUPTCY APPELLATE PANEL,
EIGHTH CIRCUIT

12