**In re San Juana PHILLIPS.**

**No. 02–35075–H2–13.**

United States Bankruptcy Court,
S.D. Texas,
Houston Division.

March 5, 2003.

David W. Barry, Law Offices of David W. Barry, Houston, TX, for Debtor.

David G. Peake, Houston, TX, Chapter 13 Trustee.

## *MEMORANDUM OPINION IN SUPPORT OF ORDER DENYING AWARD OF ATTORNEYS' FEES AS ADMINISTRATIVE EXPENSE*

WESLEY W. STEEN, Bankruptcy Judge.

This chapter 13 case was dismissed prior to confirmation of a chapter 13 plan. Debtor's counsel ("Counsel") has requested the court to award reasonable attorney's fees as an administrative expense. For reasons set forth in more detail below, the court denies the application. In summary, the court concludes that the lodestar calculation is only one factor among many that the court must consider. In addition to the lodestar, the Bankruptcy Code requires the court to consider whether the attorneys' services were necessary or beneficial toward completion of the case. Because the case was dismissed prior to plan confirmation, there was no apparent benefit to the Debtor. Although Counsel is not responsible to assure successful confirmation of a chapter 13 plan, to justify substantial hourly rates and fees when a case is dismissed prior to plan confirmation, counsel must provide evidence that counsel provided substantial professional services including investigation, evaluation, and counseling that were intended and designed to achieve an objective appropriate for chapter 13 cases.. The court denies the application because the court concludes that the evidence does not demonstrate that Counsel's services met the required test.

## FINDINGS OF FACT

### *Preface*

The statute imposes a difficult burden on the court to determine reasonable fees.

[T]he tone and content of the 1994 amendments to § 330 reflect Congressional intent that attorney's fees should be vigorously regulated in bankruptcy cases.[1]

That task is especially difficult in chapter 13 cases. First, the court cannot spend as much time on each chapter 13 case as it has on this one. The court has spent well over 15 hours on this matter. Over 1,000 new bankruptcy cases are assigned to the undersigned judge each year. There are simply not 15,000 working hours in the year to devote to determination of attorneys' fees in chapter 13 cases.

The process takes so long and is so difficult because typically there is no adversarial presentation. The presentation by counsel is unopposed, so the court must either make a decision from evidence that is not challenged and cross-examined[2] or

---

1. Keith M. Lundin, Chapter 13 Bankruptcy § 294–4 (3d ed. 2002).

2. The problem is illustrated by this reality. Counsel offered no evidence except that the going rate is $300 per hour for the kind of services that Counsel provided. Only on questioning by the court did one of the expert witnesses testify that Kenneth Keeling's firm charges $175 per hour for some attorney work in the courtroom; Mr. Keeling's firm's work is comparable to Counsel's. The court, of course, did not introduce evidence at the hearing. As this memorandum is written,

the court must itself read the entire file and try to maintain an appropriate balance. The heart of the judicial process is adversarial presentation to assure a full and fair adjudication. When only one side of the case is presented, the process is highly degraded. The court has done the best that it can with the procedure in place.

*Findings of Fact from Review of Case File, Exhibits, and Testimony*

The Debtor, through counsel, filed this chapter 13 case on May 6, 2002. No chapter 13 plan was ever confirmed. The case was dismissed on motion of the Trustee filed about 5 months after the case was opened. The Debtor did not file any response or objection to the motion to dismiss. Neither the Debtor nor Counsel appeared at the hearing on the motion to dismiss. The case was dismissed because the Debtor had failed to make payments to the Trustee, had failed to attend an orientation/education class sponsored by the Trustee, and had failed to disclose her income for the years 2000 and 2001.[3] The Debtor's plan proposed to pay $450 per month to the Trustee.[4] When it was dismissed, the case had been pending for over 5 months, but according to Counsel, the Debtor had paid only $700 to the Trustee.[5]

Two weeks after the Trustee filed his motion to dismiss, Counsel filed a motion for allowance of attorneys fees as an administrative expense (the "Initial Fee Application")[6]. Because the request sought consideration prior to the plan confirmation hearing, the court denied the application, referring counsel to the September 4, 2002, order of this court establishing a uniform procedure for consideration of fee applications at the hearing on plan confirmation.[7] Five days after the order denying the Initial Fee Application, Counsel filed a Motion for Reconsideration[8] and a Second Fee Application.[9] The Motion for Reconsideration emphasized that the case had been noticed for dismissal and assumed that the case would be dismissed since no party (not even the Debtor) had objected to dismissal. Counsel pointed out that the Initial Fee Application (paragraph 3) requested the court to retain jurisdiction of the case after dismissal so long as necessary to adjudicate the fee application. Read together, this suggests to the court that Counsel knew, at or prior to the date that the Initial Fee Application was filed on October 15, that the case would be dismissed. When the court ruled on the Second Fee Application, the court ap-

---

however, on the court's desk are fee applications by counsel whose work product is also comparable to Counsel's, and they charge less than Counsel: Damian Abreo: $160; Marjorie Britt: $225; Kenneth Thomas: $250; James Heston: $250; Janet Casciato–Northrup: $250; and Richard Aurich: $275. Paralegal rates run as low as $60 per hour. There are probably any number of others, whose fee applications are not currently on the court's desk. The court recognizes that the experience levels of these counsel may be different and that the court may not have sufficient data adequately to evaluate the quality of work. The point is that an unopposed hearing does not thoroughly develop the evidence and does not provide the safeguards of cross-examination.

**3.** The disclosure is required by Bankruptcy Official Form 7, question # 1, which must be filed at the commencement of the case. Debtor simply did not answer the question (Docket # 9). Counsel testified about the reasons for dismissal, which are undisputed.

**4.** Docket # 25.

**5.** Docket # 51.

**6.** Docket # 36.

**7.** Docket # 38.

**8.** Docket # 41.

**9.** Docket # 42.

proved a fee (administrative expense) that was less than the amount requested, and the court gave extensive written reasons.[10] Counsel requested, and was given, rehearing. A full evidentiary hearing was held on February 6, 2003. This memorandum explains the court's analysis following that hearing.

Counsel filed 16 pleadings in this case.[11] Six of those relate to attorneys' fees.[12] A review of Counsel's Time/Expense Record [13] indicates very little time devoted to obtaining information from the client or drafting pleadings. Therefore it appears that almost all data was obtained by paralegal(s) and only reviewed briefly by Counsel. Other than the schedules, statement of financial affairs, and fee applications, the only two significant pleadings filed by the Debtor were objections to motions for relief from stay.[14] Both appear to be boilerplate.[15]

Counsel testified that the resolution of an objection to plan confirmation filed by Conn Appliances [16] was a significant accomplishment in this case. No attorney time is shown on Counsel's Time Records relating to this matter. Twelve minutes is shown on the time records for July 9 in which the paralegal had a telephone conversation with Conns and resolved the objection to confirmation.[17] In any event, the agreement confers no continuing benefit to the Debtor since the plan was not confirmed and the case was dismissed.

Counsel testified that another significant accomplishment in the case was the resolution of a motion for relief from the stay filed by GMAC Mortgage, the home mortgage lender. Only 12 minutes of time is shown in Counsel's Time Records relating to this matter. None of that time indicates any negotiations or documentation. The Time Record indicates that the 12 minutes was spent responding to the motion for relief from the stay, which the court concludes, above, was a boilerplate response. Counsel did not even sign the Agreed Order with GMAC. His signature was supplied (with permission) by opposing counsel. The Agreed Order indicates

10. Docket # 49.

11. Docket # 1, 4, 9, 10, 11, 12 13, 14, 19, 24, 25, 34, 36, 41, 42, 51.

12. Docket # 13, 14, 36, 41, 42, 51.

13. Counsel Exhibit V.

14. Docket # 19 and docket # 34.

15. The only difference between the pleadings is the name of the movant and the paragraph numbers that are admitted or denied. Neither response makes any allegations specific to the collateral or the debt. Both responses allege that the creditor is adequately protected by equity in the collateral. While that allegation is plausible with respect to Docket # 34 (the Debtor's residence) it is not plausible with respect to the used car collateral (Docket # 19). For one thing, the Debtor's bankruptcy schedule D (Docket # 14) indicates that the lien exceeds the fair market

value of the collateral. See also the amended schedules, docket # 24, which indicates that the vehicles are worth only 2/3 of the amount of the lien. In addition, counsel testified that initially he did not even know how many vehicles secured the loan. It is doubtful that the allegation in docket # 19 was based on reasonable investigation. Since docket # 19 is identical with docket # 34, it is more probable than not that the pleadings are simply boilerplate. The court will not pursue an inquiry into whether an adequate investigation was undertaken to satisfy FRBP 9011. The court notes, however, that Counsel's Time Records show that only 12 minutes of attorney time was addressed to responding to this motion.

16. Docket # 20.

17. Review of the docket does not indicate that the resolution of the Conn's objection was a signal achievement. Conn's contended that its collateral was worth $2,420. The agreement valued the collateral at $1750.

that the Debtor had made *no* post-petition payments on the mortgage loan. There was no testimony concerning whether Counsel instructed the Debtor to make post-petition mortgage loan payments. In fact, for reasons discussed below, it is reasonable to conclude that the failure to pay the mortgage was a deliberate strategy intended to benefit the Debtor at the expense of the creditor. In any event, the resolution of the motion for relief from the stay confers no continuing benefit to the Debtor since the case has been dismissed.

Counsel testified that another significant accomplishment in the case was cramdown of the vehicle loan.[18] According to Counsel's time records, Counsel devoted 54 minutes to the claim secured by vehicles. Twelve minutes was spent on the boilerplate response to the motion for relief from the stay. Thirty minutes was spent at a hearing on the motion for relief from the stay.[19] The final 12 minutes on this matter was spent accomplishing two tasks: finalizing the agreed order and writing a letter to the client. Since both were accomplished in 12 minutes, it does not appear that there was substantial negotiation. Regardless, this achievement provides no continuing benefit to the Debtor since the plan was not confirmed and the case was dismissed.

The court heard testimony from two attorneys (in addition to Counsel), both of whom are recognized by the court as experienced and outstanding practitioners of consumer bankruptcy law in Houston. They testified that an hourly rate of $300 per hour is appropriate for experienced consumer bankruptcy attorneys and that $85 per hour for a paralegal is appropriate. One testified that he does not collect about 20% to 25% of the amount that he bills. He testified that he is routinely awarded attorneys' fees in chapter 13 cases in which a chapter 13 plan is not confirmed.[20] Counsel posed to these experts a hypothetical case, very similar or identical to the facts of this case. Both experts opined that: (i) a non-lawyer petition preparer could not have obtained similar results, (ii) the work performed by Counsel is not clerical in nature, (iii) the work performed by Counsel required the services of an experienced bankruptcy attorney, (iv) the result was a "good result for the debtor", (v) the work benefitted the debtor, (vi) the dismissal was not the attorney's fault, and (vii) $2,184.41 (total fees and expenses) is an appropriate amount to award to the attorney under this hypothetical case.

One of the experts testified that his opinion required the assumption that (i) that the attorney communicated to the

18. The court notes, in passing, that Counsel used the term "cramdown" to refer to confirmation of a bankruptcy plan that requires a secured lender to accept less than a full payoff of the loan because the value of the collateral is less than the amount of the loan. Since no plan was confirmed in this case, there could have been no cramdown. The court interprets Counsel's testimony to be that Counsel had obtained agreement on cramdown, *if the case had not been dismissed and the plan had been confirmed*. In any event, since no plan was confirmed, the agreement is valueless.

19. Although the evidence is not completely clear, the court understands that Counsel

found out from the secured lender (not from the Debtor) that the collateral consisted of four vehicles not two (as Counsel and the Debtor had indicated in the schedules). Part of this 30 minutes might have been related to this fact finding. The substance of the agreed order was that three of the vehicles would be surrendered and the Debtor would pay for the fourth in the chapter 13 plan. Since no plan was confirmed, this agreement is valueless.

20. The testimony did not indicate what amount of fees was routinely awarded. It was implied that the full lodestar calculation was awarded.

client at the initial interview all of the important information needed to conduct the case and the attorney counseled the client about these matters and (ii) that Counsel diligently attempted to get the client to respond whenever there were defalcations.[21] That expert also testified that, if a chapter 13 case is dismissed prior to plan confirmation, it is difficult to reach a conclusion about whether a benefit has been conferred on the debtor. He testified that when the case is dismissed prior to plan confirmation, there is no permanent benefit to the Debtor, but that the Debtor has been given the opportunity to reorganize and (if dismissal was the debtor's fault) then the attorney is not to blame.

Finally, that expert testified that in many cases that are dismissed prior to confirmation, the only benefit to the Debtor is that the Debtor might have achieved a respite from making mortgage payments or car payments but nevertheless would have enjoyed the continued use of the residence and the automobile. This respite might allow the Debtor to save funds to spend after the case is dismissed or the collateral is lost through foreclosure.[22] Counsel's partner indicated that this was a "typical situation."

> Mr. Joffe: I'm assuming it gave her the opportunity to have a place to live for several months rent free while she could gather money together to go to another place, which is a typical situation.[23]

The expert witness stated:

> From my observation in practicing in this area since 1983, most of the time the clients are cash poor, and a chance to live without having a housing expense allows them to save some money to move on.[24]

Counsel testified that he is an accountant and an attorney, and that he has been practicing consumer bankruptcy law since 1990. He charges $300 per hour for his time and $85 per hour for his paralegal. His clients typically sign a fee agreement that specifies a $300 hourly rate. Counsel believes that his fees are within the range of what he has found (through a study) to be prevailing fees in the Houston market; he testified that his fees are higher than some, lower than some. Counsel testified that the Debtor in this case did not make post-petition mortgage payments on her residence; Counsel did not testify whether he had instructed the client that she was required to make such payments. Counsel did not testify about whether there was a strategy in this case for the Debtor to live in the residence expense free and to save the mortgage payment in prospect of abandoning the residence when the case was dismissed. Counsel testified that he does not know whether the client eventually abandoned or lost the residence, automobile, and other collateral by failing to make the payments.

Counsel testified, and the bankruptcy schedules disclosed, that prior to filing the bankruptcy case, the Debtor had received a $10,000 cash settlement of a personal injury action. According to the schedules, the Debtor still held that sum, in cash, on the petition date. There was no testimony concerning whether counsel made any financial analysis or had any discussion with the Debtor about resolving her financial

---

21. As discussed below, the court concludes that the evidence in this case does not support those assumptions. Therefore, the opinion of the second expert does not support award of the fees requested by Counsel.

22. Transcript, page 34 line 1 to page 37 line 18.

23. Transcript, page 35, lines 5–8.

24. Transcript, page 37, lines 11–14.

problems (in whole or in part) with some or all of that cash.

Counsel's exhibits show that, in other cases, a number of judges, *including the undersigned judge* have approved Counsel's hourly rate of $300 per hour. In fact, the bulk of Counsel's testimony involved the reasonableness of $300 per hour and the fact that other lawyers (both in bankruptcy practices and in other practices) earn $300 per hour. When questioned by the court, Counsel stated that he knew that one practitioner with a very high quality consumer bankruptcy practice charges $175 per hour for attorneys who appear in court.

The most significant evidence provided at the rehearing was Exhibit V, Counsel's time and expense record. It shows that Counsel met with the Debtor for only 36 minutes (.6 hours)[25] on the day that the bankruptcy case was filed, presumably prior to filing the petition. Counsel testified that the petition was filed to stop a foreclosure. The schedules, plan, and other documents were apparently prepared principally from paralegal interview/consultation with the client.[26] So far as the court can tell from the time sheets, Counsel did not meet with the client again until over two weeks later, when counsel spent another 36 minutes with the client to review and to sign the schedules and a plan. So far as the court can tell, this one hour and 12 minutes is the total time that counsel spent with the client.[27]

Counsel testified that the negotiation of agreed orders with the secured lenders (Conn Appliances, Wells Fargo and GMAC Mortgage) were signal accomplishments, which required the expertise of experienced counsel. However, as discussed above, the time sheet shows no significant time spent by counsel in negotiations or in drafting agreements.

No significant time is shown to be devoted to client counseling, explaining the duties and responsibilities of a debtor in a chapter 13 case, discussing with the client whether the client could comply with the terms of the agreed 362 orders, or discussing responses to the trustee's motion to dismiss and how to avoid dismissal.

The Time Records show only one entry relating to the Trustee's motion to dismiss. On October 1 the paralegal reviewed the motion to dismiss, reviewed the status of the plan, and made a phone call to the Debtor. The total time involved was 18 minutes. No attorney time is recorded as devoted to resolving the motion to dismiss.

## LEGAL ANALYSIS

*Summary*

Debtors in chapter 13 cases are required to begin to make payments to the chapter 13 trustee within 45 days after the case is filed. If a plan is confirmed, the trustee distributes the accumulated funds in accordance with the plan. If a plan is not confirmed the trustee pays administrative

---

**25.** It is possible that Mr. Barry or Mr. Joffe spent an additional 12 minutes with the client on May 6, but the time entry indicates that this time was spent to "Complete short file, review plan outline." There is no indication that this time was spent with the Debtor.

**26.** The time sheet does show that the attorney spent "M–X time" (12 minutes) on May 15, but there is no indication of what M–X time is.

**27.** The court does not consider this time to be significant counseling time, especially since much of it was apparently spent gathering necessary information, signing the petition, and signing the schedules and plan. There was no testimony or other evidence of substantial counseling that was specific to this client's case.

expenses and returns the remainder, if any, to the debtor.[28]

Bankruptcy Code § 330(a)(4)(B) provides that the court *may* allow reasonable compensation to debtor's counsel in a chapter 13 case. (Emphasis Supplied). The statute lists the factors that the court must consider when it determines the amount of a reasonable fee. Compensation that is awarded under § 330 is an administrative expense of the estate.[29]

*Detailed Analysis*

With respect to counsel for the debtor in a chapter 13 case, the Bankruptcy Code provides [30]

In a chapter 12 or chapter 13 case in which the debtor is an individual, the court may allow reasonable compensation to the debtor's attorney for representing the interests of the debtor in connection with the bankruptcy case based on a consideration of the benefit and necessity of such services to the debtor and the other factors set forth in this section.

Section 330(a)(3) lists the "other factors". Those factors are the same ones that the court is directed to consider when determining compensation for professionals employed by trustees and debtors in possession.

In determining the amount of reasonable compensation to be awarded, the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including—

(A) the time spent on such services;

(B) the rates charged for such services;

(C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;

(D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed; and

(E) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

Therefore, it is clear that "benefit and necessity to the debtor" is a factor that expressly applies to counsel for chapter 13 debtors. The "other factors" apply to all professionals who seek compensation in a bankruptcy case, including debtor's counsel in chapter 13 cases as well as professionals engaged by trustees and debtors in possession.[31]

*Consideration of the Factors in Detail*

1. Nature of the services:

Mr. Joffe (Counsel's partner) conducted an initial interview with the client. Coun-

---

28. Bankruptcy Code § 1326(a).

29. Bankruptcy Code § 503(b)(2).

30. Bankruptcy Code § 330(A)(4)(B).

31. The authority usually cited for determination of attorneys fees in bankruptcy cases includes *Johnson v. Georgia Highway Express, Inc.* 488 F.2d 714 (5th Cir.1974) and *In re First Colonial Corp. of America,* 544 F.2d 1291 (5th Cir.1977). Both predate the Bankruptcy Code, and certainly predate the 1994 amendment to the Bankruptcy Code which established the authority to award (and the criteria for award of) attorneys fees for counsel for debtors in chapter 13 cases. The 1994 amendments were designed "... to foster greater uniformity in the applications, processing, and approval of fees ... the amendments expanded the factors that the courts should consider ..." *Norton Bankruptcy Law & Practice* § 26:5. Since the court has more recent and more specific authority than those cases, and since the factors listed in the statute are not materially different from those specified in these cases, the court discusses only the statute.

sel signed a skeletal bankruptcy petition, signed boilerplate responses to motions for relief from the stay, made a very short review of various schedules and a chapter 13 plan prepared by a paralegal, met with the client to sign schedules, attended a 341 meeting, and attended a hearing on a motion for relief from the stay. These efforts consumed only 12 minutes each except for:[32] a court appearance on a motion to lift stay (30 minutes), appearance at the creditor's meeting (30 minutes), an initial client interview (36 minutes), a review of schedules (18 minutes), and a meeting with the client to sign the schedules (36 minutes).[33]

The court has explained above that no time entries for Counsel support the conclusion that Counsel spent a material amount of time in thoughtful client counseling, to avoid case dismissal, or to achieve the alleged significant achievements of the case.

2. Extent and value of the services:

Counsel spent 4.2 hours on these services and the paralegal spent 10.6 hours. According to the testimony at the rehearing, the rates charged by other attorneys in Houston with like experience and expertise range from $175 per hour to $300 per hour for attorneys and about $60 per hour for paralegals. Applying the lodestar, the time and rate charged yield a fee of between $1,371 and $1,981.

3. Specific factors

a. Time spent-discussed fully above. 4.2 attorney hours and 10.6 paralegal hours.

b. Rates charged-discussed fully above. $175–$300 for attorneys and $60 to $85 for paralegals.

c. Necessary to the administration of, or beneficial toward the completion of the case-A bankruptcy petition, schedules, plan document, responses to motions, *etc.*, are certainly necessary to a bankruptcy case. Counsel provided those documents. It is not clear that those services were necessary or beneficial to the completion of the case or that completion of the case was even intended.

d. Counsel does not appear to have spent excessive time on the projects, and pleadings were filed timely.

e. Testimony indicated that a reasonable fee for a chapter 13 case of this complexity is about $2,000. But that fee applies to all services through plan confirmation. The testimony did not establish a specified fee for cases dismissed prior to confirmation

*Section 330(A)(4)(B)-benefit and necessity of the services*

■ As noted earlier, the evidence presented by Counsel at rehearing focused principally on (i) parity for hourly rates of debtors' counsel in chapter 13 cases with rates charged by counsel in complex chapter 11 cases and (ii) the lodestar calculation. But the lodestar is the beginning, not the end (or necessarily even the most important factor) stated in the statute. Section 330 requires the court to consider the benefit of the services to the debtor and the necessity and benefit of the services to the completion of the case.

---

**32.** The court notes that the minimum time entry is 12 minutes, even apparently to sign boilerplate pleadings. There is one exception, only 6 minutes was charged to sign a certificate of service.

**33.** The court notes, in passing, that all meetings with the client were exactly 36 minutes and all appearances (in court and 341 meetings) were 30 minutes.

The jurisprudence has struggled to interpret the concept of "benefit" to the debtor in connection with fee applications related to chapter 13 work.

In order to benefit the estate, the services rendered must relate to a realistically obtainable goal. Counsel for a debtor or debtor in possession will not be compensated for time spent in preparation of a plan which has no realistic hope of confirmation. *See Rubner & Kutner, P.C. v. U.S. Trustee (In re Lederman Enterprises, Inc.)*, 997 F.2d 1321, 1324 (10th Cir.1993) (where inability of debtor to propose plan "should have been apparent to counsel from the commencement of the case," no compensation awarded); *accord, Keate v. Miller (In re Kohl)*, 95 F.3d 713, 714–715 (8th Cir.1996); *see also In re Saturley*, 131 B.R. 509, 521 (Bankr.D.Me.1991) (". . . futile efforts aimed at achieving unattainable objectives are unreasonable. Fees generated in tilting at windmills will be disallowed.") (citations omitted). Finally, the fact that a debtor derives personal benefit from the delay of collection efforts against him or her due to the bankruptcy case does not constitute a benefit for purposes of awarding compensation. *See Bachman v. Pelofsky (In re Peterson)*, 251 B.R. 359, 365 (8th Cir. BAP 2000) (affirming refusal to award fee where "efforts resulted in no benefit to the debtor under § 330(a)(4)(B), other than to cause delay in payment."). [*In re Polishuk*, 258 B.R. 238, 249 (Bankr.N.D.Okla.2001) ].

*Collier on Bankruptcy* indicates that "benefit" is determined in the context of whether the services promote the successful completion of a chapter 13 plan:

. . . [S]ervices that benefit the debtor in connection with the case are services that facilitate the successful completion of the debtor's plan. [*Collier on Bankruptcy*, 15th Ed. ¶ 330.04[1][b][v].]

To the extent that chapter 11 cases are persuasive, the court notes that debtor's counsel has some responsibility to investigate whether a plan is feasible, *Rubner & Kutner, P.C. v. U.S. Trustee (In re Lederman Enterprises, Inc.)*, 997 F.2d 1321 (10th Cir.1993), *Keate v. Miller (In re Kohl)*, 95 F.3d 713 (8th Cir.1996).

## CONCLUSION

This court has abandoned any benchmark for chapter 13 counsel fees, and has announced its recognition of the statutory criteria. But abandonment of the benchmark does not mean that fees are computed solely by application of the lodestar. The statute requires more. The statute requires the court to consider (among other things) whether there was a benefit to the debtor and whether the attorney's services were necessary or beneficial toward the completion of the case.

 When a chapter 13 plan is confirmed, there is an obvious and demonstrated benefit to the debtor and, presumably, counsel's services contributed to completion of the case. In most cases, additional proof will not be needed. But when cases are dismissed prior to plan confirmation, Counsel must provide an explanation in the fee application and evidence that counsel provided substantial, valuable professional services including investigation, evaluation, and counseling that was intended and designed to achieve an objective appropriate for chapter 13 cases.

 Counsel in a chapter 13 case is not responsible to assure that the Debtor can or will make payments to the trustee. Counsel is not responsible to assure that the Debtor will fulfill any of the other requirements for confirming a plan and obtaining a discharge. Counsel is not re-

sponsible to guarantee the completeness or absolute accuracy of any of the information provided by the Debtor.

■ But to justify more than merely a nominal fee, it is not sufficient to show that pleadings were filed on time and in the proper form.[34] To justify more than a nominal fee, counsel must provide evidence of valuable professional efforts to investigate and to evaluate the facts, valuable professional efforts to assess the prospects for confirming a chapter 13 plan, valuable professional efforts to confirm a chapter 13 plan, valuable professional client counseling concerning the debtor's postpetition duties and responsibilities, and a reasonable belief that a plan could be confirmed and consummated.[35]

■ Under the Model Rules of Professional Conduct, counsel's duty is to the client. However, under rule 9011 of the Federal Rules of Bankruptcy Procedure (FRBP), Counsel has a duty to investigate and to evaluate before filing a bankruptcy petition or pleading. The petition or pleading cannot be filed (or later advocated) for an improper purpose. A proper purpose for filing a chapter 13 bankruptcy petition is to confirm a plan (and thereby to obtain a discharge). Filing a petition [36] for the purpose of avoiding mortgage payments to accumulate cash for use when the case is dismissed (or when the collateral is foreclosed or abandoned) is an improper purpose and is an abuse of § 362. Regardless of whether or not the abuse violates FRBP 9011, attorney services that merely allow the debtor to use a creditor's collateral (without payment) are not necessary or beneficial toward confirmation of a plan or to completion of the case and therefore do not entitle an attorney to compensation.[37]

■ There is no evidence in the record that counsel made any material investigation concerning the facts of the case.[38] There is no evidence before the court that Counsel and the Debtor ever engaged in serious financial analysis or planning. There is no evidence in the record that Counsel spent a material amount of time counseling the client.[39] The court cannot conclude that the case was dismissed, notwithstanding Counsel's best efforts, simply because the client did not perform.

---

34. One of the leading bankruptcy law treatises suggests that courts require more than minimal services that are largely clerical in nature.

Recently, some courts have begun to carefully scrutinize fees charged by attorneys in consumer bankruptcy cases and significantly reduce such fees for, among other things, failure to provide minimal legal services or failure to do more than prepare the petition, schedules of assets and liabilities and attend the first meeting of creditors. [*Norton Bankruptcy Law and Practice 2d*, § 26:5.]

35. When unanticipated postpetition events (such as medical problems, loss of a job or other income, destruction of collateral, *etc.*) prevent plan confirmation, counsel should explain and document those facts in the § 503(b) application.

36. Or continuing to support a petition.

37. The hearing on this matter and this opinion does not address Rule 9011 sanctions, and the court does not intend to pursue those issues in this case.

38. The court notes, without limitation: the limited amount of time spent with the client, the fact that schedules and statements were apparently prepared almost exclusively from information obtained and analyzed by paralegals and only reviewed briefly by Counsel, that counsel learned about collateral from the secured lender.

39. For example, without limitation, there is no indication that Counsel personally spent any time attempting to contact the client concerning the pending dismissal of the case.

84

Counsel alleged that the substantial benefits of the case related to the Conn's, Wells Fargo, and GMAC agreements. But because dismissal of the case eliminated any potential benefit from those agreements, the court cannot find any legitimate benefit from Counsel's efforts that survived dismissal of the case.

Because it is admitted that the Debtor had $10,000 cash (but made no post-petition payments to the mortgage lender), because the Debtor defaulted on most of the monthly payments to the Trustee, because Counsel's Initial Fee Application implies that Counsel knew early in the case that the case would be dismissed prior to plan confirmation, and because counsel represented to the court that free use of secured lender collateral without confirmation of a plan was a "typical situation", the Court cannot conclude by a preponderance of the evidence that Counsel's efforts were directed toward confirmation of a chapter 13 plan. Therefore, the court cannot conclude that Counsel's services were directed at an appropriate objective or that they were necessary or beneficial toward the completion of the case.

Counsel testified that he does not know whether the Debtor lost her home or automobile after the case was dismissed. He testified that his perception of the benefit that she received was (i) having the opportunity to propose a chapter 13 plan, and (ii) living in her home without paying mortgage payments for 6 or more months. The first does not justify a fee of $1,981. The second does not justify any fee at all.

At best, Counsel's efforts provided the minimum requirements for the Debtor to propose a chapter 13 plan. After reconsideration, the court concludes that the amount awarded in the original order (on the Second Fee Application) was excessive.

On consideration of the additional evidence produced at the rehearing, the court concludes that the award of an administrative claim is inappropriate. The application for award of attorneys' fees as an administrative expense is denied and the Trustee is ordered to refund all remaining sums in his possession to the Debtor. The effect of this decision and order is to leave counsel with a $565 fee, which is about $800 less than the minimum lodestar (# 1371) calculated above.[40]

**40.** See docket # 12, 36, 42. (Although docket # 13, ¶ 2 states that counsel has received no payment, the Court believes that this is a clerical error.) In this case, the court declines to exercise its authority under Bankruptcy Code § 329 or under FRBP 9011. The court may, or may not, decide to do so in other cases.