**In re Robert F. RYAN and Julie Ryan, Debtors.**

No. 13–30168–svk.

United States Bankruptcy Court, E.D. Wisconsin.

Signed Sept. 15, 2014.

Chad L. Schomburg, Milwaukee, WI, for Debtors.

## DECISION AND ORDER ON DEBTORS' ATTORNEYS' APPLICATION FOR COMPENSATION

SUSAN V. KELLEY, Bankruptcy Judge.

Robert and Julie Ryan (the "Debtors") filed this Chapter 13 case on July 27, 2013. Debt Advisors, S.C. ("DA") represents the Debtors. On August 7, 2013, DA filed its "Disclosure of Compensation of Attorney for Debtor" disclosing a fee of $3,500, of which $0.00 had been paid. (Docket No. 8 at 47.) This disclosure was false; prior to the petition, the Debtors paid $950 toward DA's fee and $294 for the filing fee and credit counseling fee. (Docket No. 34–1 at 7.)

The Debtors filed a Chapter 13 plan on August 7, 2013, but the plan was not confirmable. They filed a motion to modify the plan on February 12, 2014; the proposed modified plan contained a typographical error in the plan payment amount. The Debtors made plan payments of $1,336 per month from August through October 2013, but then stopped. (Docket No. 27 at 2.) On March 4, 2014, the Trustee filed a motion to dismiss the Debtors' case. The parties resolved the motion by stipulating that if the Debtors missed a plan payment from April through September 2014, the Trustee could file an affidavit of default, and the case would be dismissed. (Docket No. 29.) When the Debtors made only a partial plan payment in May 2014, on June 13, 2014, the Trustee filed an affidavit of default. (Docket No.

35.) Meanwhile, on May 29, 2014, DA filed an application for compensation in the amount of $2,359.56, and the Debtors objected. The Court dismissed the case on August 4, 2014, retaining jurisdiction in the dismissal order to consider and rule on DA's fee application.

At the August 19, 2014 hearing on the application, the Debtors raised three main concerns with DA's fees. First, it was very important to Julie Ryan to work with an attorney that she trusted. Mr. Ryan testified that, in response to her concerns, Chad Schomburg, DA's principal, promised that he would be their attorney throughout the case. However, Attorney Schomburg did not appear at the meeting of creditors, work on plan amendments, or appear in court in response to motions to dismiss (or, the Court would add, respond to or appear at the hearing on the Debtors' objection to DA's fee application). Second, the Debtors allege that DA made an error in the modified plan that was filed with the Court. Mr. Ryan himself caught the discrepancy and contacted DA. DA lawyer Laurie Bigsby admitted the mistake, but took the position that since the case appeared headed for dismissal, there was no point in filing a corrected plan. Third, the Debtors contend that DA did not properly explain issues to them, especially the ever-increasing plan payments. In their meeting on July 17, 2013, DA estimated the plan payment at $998 per month. (Docket No. 48.) The payment increased to $1,336 in the initial plan filed August 7, 2013. When DA filed the modified plan on February 12, 2014, the proposed payment was $1,451 (or $1,541—there is a discrepancy in the document) per month.

DA's position is that the Debtors never complained about the fees until DA filed the fee application. DA's office manager testified about the bill, stating that all entries were properly billed to the Debtors. Attorney Bigsby called Robert Ryan as a witness, but she abruptly ended her examination of Mr. Ryan when he contended that he complained to her about DA's services, something she apparently disputes.

Two statutory provisions govern the allowance of DA's request for compensation. Section 329 of the Bankruptcy Code requires all debtors' attorneys to file a statement of their compensation and permits the Court to order the return of any compensation "to the extent excessive." And § 330(a)(4)(B) provides that a court may allow reasonable compensation to a Chapter 13 debtor's attorney "based on a consideration of the benefit and necessity of such services to the debtor and the other factors set forth in this section." After considering the case docket, the fee contract between DA and the Debtors, and the testimony and argument at the hearing, the Court concludes that DA's disclosure was deficient and its services for the most part did not benefit the Debtors.

### I. Violation of Disclosure Requirements

The disclosure requirements under § 329 are "mandatory, not permissive." *Jensen v. United States Tr. (In re Smitty's Truck Stop)*, 210 B.R. 844, 848 (10th Cir. BAP 1997) (quoting *Turner v. Davis, Gillenwater & Lynch (In re Inv. Bankers, Inc.)*, 4 F.3d 1556, 1565 (10th Cir.1993)). The case law and legislative history indicate that Congress was concerned that debtor's counsel's compensation presents both a "serious potential for evasion of creditor protection provisions" and "serious potential for overreaching by the debtor's attorney." *In re Jackson*, 401 B.R. 333, 339 (Bankr.N.D.Ill.2009). As a result, attorneys must disclose all compensation paid by or on behalf of the debtor, and the disclosure must be "precise and complete." *Id.* (citing *In re Berg*, 356 B.R.

378, 381 (Bankr.E.D.Pa.2006)). Negligence or inadvertence is not a valid defense to a failure to disclose. *Smitty's Truck Stop,* 210 B.R. at 848 (citing *Neben & Starrett, Inc. v. Chartwell Fin. Corp. (In re Park–Helena Corp.),* 63 F.3d 877, 881 (9th Cir.1995)). An attorney who fails to fully comply with the disclosure requirements under § 329 and Rule 2016(b) forfeits any right to receive compensation for services provided to a debtor and may be ordered to return fees already retained. *Id.; see also Jackson,* 401 B.R. at 340–41 ("Many courts, perhaps the majority, punish defective disclosure by denying all compensation.").

■ DA's disclosure of compensation states that the fee is $3,500 of which $0.00 has been received. (Docket No. 8 at 47.) The Debtors' statement of financial affairs repeats this information, when it states that DA was paid "$0 upfront; $3,500 to be paid in the plan." (*Id.* at 41.) However, the fee contract shows that prior to the petition, the Debtors paid $950 plus the filing fee and credit counseling fee. (Docket No. 48.) DA's fee application also reflects payments of $950 for fees and $294 for the filing and credit counseling fees. (Docket No. 34–1 at 7.) And Attorney Bigsby reiterated these payments at the hearing on August 19, 2014. Yet DA never amended its compensation disclosure form to correct the error. DA cannot escape responsibility for providing false information to the Court about its compensation. While the matter does not appear so egregious as to require disgorgement of the fees that DA already received, under the circumstances, DA has forfeited its right to further compensation from the Debtors or the bankruptcy estate.

## II.  Reasonableness of Compensation

■ Since DA's false disclosure justifies disallowance of DA's requested fees, the Court need not reach the Debtors' objec-

tion to the reasonableness of the fees. However, under the "benefit to the debtor" standard set by § 330(a)(4)(B), disallowance of a substantial amount of DA's fees would be appropriate even if DA had filed an accurate disclosure statement.

In *In re Phillips,* 291 B.R. 72, 82 (Bankr.S.D.Tex.2003), the bankruptcy court reduced a Chapter 13 debtor's attorney's fee when the plan was not confirmed, finding: "[W]hen cases are dismissed prior to plan confirmation, Counsel must provide an explanation in the fee application and evidence that counsel provided substantial, valuable professional services including investigation, evaluation, and counseling that was intended and designed to achieve an objective appropriate for chapter 13 cases." Although careful to caution that the debtor's attorney is not responsible to assure that the debtor makes the plan payments, the *Phillips* court observed that to justify more than a nominal fee, "[C]ounsel must provide evidence of valuable professional efforts to investigate and to evaluate the facts, valuable professional efforts to assess the prospects for confirming a chapter 13 plan, valuable professional efforts to confirm a chapter 13 plan, valuable professional client counseling concerning the debtor's postpetition duties and responsibilities, and a reasonable belief that a plan could be confirmed and consummated." *Id.* at 83. *See also In re Ward,* 511 B.R. 909, 914 (Bankr.E.D.Wis. 2014) ("Given that the debtors' plans were never confirmed, any benefit that counsel's services provided to the debtors is not obvious.").

DA's fee application contains a detailed description of DA's legal services, which could provide the requisite evidence of the benefit of DA's services to the Debtors. However, the fee application falls short in at least three areas. First, the application gives an erroneous description of the fee

arrangement. It begins with the statement that the Debtors agreed that $3,950 would be paid to DA through the plan for "pre-filing advice, petition and schedule preparation and representation at the Section 341 hearing ('initial agreement'). All other legal services were to be bill (sic) at $250 per hour for services rendered by [DA's] Attorneys and $50 per hour for services rendered by [DA's] paralegals and assistants." (Docket No. 34 at 1.) However, DA's contract with the Debtors does not reflect a $3,950 fee; rather it suggests that the fee is $4,450. And DA's Rule 2016(b) disclosure statement disclosed a fee of $3,500.

■ Second, it is simply not reasonable for DA to charge $3,500 or more for pre-filing advice, petition and schedule preparation, and attendance at the meeting of creditors. The fee application's explanation of DA's Chapter 13 flat fee implies that the fee does not even include preparation of the plan or dealing with objections to confirmation. While the Court can conceive of extraordinary cases in which the Court's presumed reasonable fee of $3,500 could be expended without drafting and obtaining confirmation of a plan, this case is not one of them. DA's own fee application shows that the fees charged for the "initial agreement" stage of the representation totaled $940, including $375 for attending the meeting of creditors and $250 for the meeting when the Debtors signed the documents to file the case. (Docket No. 34–1 at 1, 2.)

■ Third, services necessitated by DA's clerical or legal errors do not benefit the Debtors, are not reasonable, and should not be compensated. For example, in the original plan, although DA recognized the IRS and Adams County tax claims as secured claims, DA failed to provide any interest for these claims, necessitating an amended plan. (Docket No. 9 at 4.) The amended plan then contained a clerical error in the amount of the plan payment, providing $1,451 in one section and $1,541 in another. (Docket No. 24 at 2, 3.) Also, the motion to modify the plan states that the original plan was dated July 27, 2013, when the original plan was actually dated August 7, 2013. (*Id.* at 3.) Creditors could have been misled or confused about which plan the Debtors were actually amending. And DA inserted a special provision into the original plan that proposed to limit notices to creditors who filed claims. (Docket No. 9 at 5.) The Trustee apparently required this provision to be amended as well, because the motion to modify the plan removed this provision, giving as its reason: "U.S. Bankruptcy Code provisions." The charges for services related to the modified plan totaled over $670. These examples are not the only instances of questionable fee entries, but they amply demonstrate that DA's requested compensation is not reasonable.

■ DA's fee application does not provide any explanation of how its services benefitted the Debtors, other than the unsupported conclusion that the services provided were necessary and beneficial toward the completion of the case. But the case did not complete successfully. As Attorney Bigsby candidly admitted, the case was heading for dismissal prior to confirmation. The major benefit that the Debtors experienced in this case was the operation of the automatic stay, and that benefit is insufficient to award compensation. "[T]he fact that a debtor derives personal benefit from the delay of collection efforts against him or her due to the bankruptcy case does not constitute a benefit for purposes of awarding compensation." *In re Polishuk,* 258 B.R. 238, 249 (Bankr.N.D.Okla.2001) (citing *Bachman v. Pelofsky (In re Peterson),* 251 B.R. 359, 365 (8th Cir. BAP 2000) (affirming refusal to award fee where "efforts resulted in no

benefit to the debtor under § 330(a)(4)(B), other than to cause delay in payment.")).

While it is true that the Debtors have a somewhat out of the ordinary Chapter 13 case, featuring IRS and county tax issues, the fee application does not reflect that DA spent any significant time working on these issues. DA did not provide for interest on the secured tax claims or adequately explain the plan payment changes to the Debtors, and DA compounded the problem by filing a modified plan with clerical errors in critical provisions. Meanwhile, Mr. Ryan testified that the Debtors were experiencing a loss of rental income in their duplex, and DA's efforts should have been directed at determining whether a plan was feasible. DA's work in this case did not include "valuable professional efforts to assess the prospects for confirming a chapter 13 plan" required under § 330(a)(4)(B). *Phillips*, 291 B.R. at 83. Instead, DA's services involved supplying documents to the Trustee and correcting legal and clerical errors. Under the circumstances, DA's services did not benefit the Debtors, and compensation for those services would not be reasonable.

### III. Conclusion

The Debtors paid DA $950 plus the filing fee to begin this Chapter 13 case, with the understanding that an additional fee would be paid through the plan. DA did not accurately disclose this arrangement in its Rule 2016(b) statement and later filed a fee application alleging that the fee was $3,950, of which $950 had been paid by the Debtors prior to the petition. The false disclosure of compensation justifies denial of DA's fee request in this case. However, even if the disclosure was proper, DA failed to meet its burden of proof that the fees requested in this case, which was dismissed before confirmation, benefitted the Debtors.

IT IS THEREFORE ORDERED: DA's application for compensation is denied; and

IT IS FURTHER ORDERED: the Trustee shall distribute all plan payments that she has been holding pending the outcome of this dispute directly to the Debtors.